THE AMALGAMATED DENTAL COMPANY, LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3730. Promulgated May 9, 1946.

*Joseph C. White, Esq.*, for the petitioner.
*Walt Mandry, Esq.*, for the respondent.

**OPINION.**

DISNEY, *Judge*: Was petitioner "engaged in trade or business within the United States," within the text of sections 231 (b) and 14 (c) of the Internal Revenue Code, or was it a "nonresident corporation," within the language of section 231 (a)? The pertinent sections are

set forth in the margin.[1]  Though the above sections cover also a foreign corporation having an office or place of business in the United States, it is not contended that the petitioner had such place of business.  The petitioner contends that its position falls under section 231 (b).

The question as to what constitutes doing business is one of fact. *Higgins* v. *Commissioner*, 312 U. S. 212.  We have reviewed at length the circumstances here involved and we have come to the conclusion that the petitioner was not during the taxable years engaged in trade or business within the United States.  For many years prior to the taxable year the petitioner had been merely purchasing dental supplies from Dentist Supply, the corporation in New York.  Though upon brief the petitioner makes some attempt to demonstrate that the nature of the petitioner's earlier relation to the American company does not appear, we think, on the contrary, it is very clear that the relation between the two companies was merely that of purchaser and seller until about May 3, 1940.  That the petitioner had not regarded itself as subject to the capital stock tax at an earlier date appears from the fact that in its capital stock tax return filed February 26, 1943, it answered "No" to the question as to whether a 1939 capital stock tax return had been filed.  This is indication that no business was considered done in the United States.  Other evidence is equally convincing.

Change, it is contended by the petitioner, took place in the relations between the petitioner and Dentist Supply about May 3, 1940—a change so marked that it engaged the petitioner in business within the United States.  The contention is, in substance, that Dentist

---

[1] SEC. 231. TAX ON FOREIGN CORPORATIONS.

(a) NONRESIDENT CORPORATIONS.—

(1) IMPOSITION OF TAX.—There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by sections 13 and 14, upon the amount received by every foreign corporation not engaged in trade or business within the United States and not having an office or place of business therein, from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 15 per centum of such amount, except that in the case of corporations organized under the laws of a contiguous country such rate with respect to dividends shall be reduced to such rate (not less than 5 per centum) as may be provided by treaty with such country.

[The rate for 1941 was 27½ percent.]

*    *    *    *    *    *    *

(b) RESIDENT CORPORATIONS.—A foreign corporation engaged in trade or business within the United States or having an office or place of business therein shall be taxable as provided in section 14 (c) (1).

(c) GROSS INCOME.—In the case of a foreign corporation gross income includes only the gross income from sources within the United States.

SEC. 14. TAX ON SPECIAL CLASSES OF CORPORATIONS.

*    *    *    *    *    *    *

(c) FOREIGN CORPORATIONS.—

(1) In the case of a foreign corporation engaged in trade or business within the United States or having an office or place of business therein, the tax shall be an amount equal to 22⅖₀ per centum of the normal-tax net income, regardless of the amount thereof.

Supply became at that time the agent of the petitioner; and such agency is contended for, in effect, because Dentist Supply thereafter, instead of shipping dental supplies to the petitioner in London for resale by the petitioner to its customers (outside the Western Hemisphere, customers to which, by agreement with Dentist Supply, petitioner could not sell), shipped the dental supplies directly to the petitioner's customers, under directions, both general and special, from the petitioner, billed the customer at a retail rate set by the petitioner, billed the petitioner for the wholesale rate, received payment from the customers, and remitted to the petitioner the difference between the two rates. In addition, Dentist Supply arranged for export and Treasury licenses, shipping space, and insurance. No charge was made by it for the services performed. The invoices rendered to the petitioner by Dentist Supply recited that the supplies referred to were "sold to The Amalgamated Dental Company, Ltd., London, England."

The association between the petitioner and Dentist Supply had lasted about forty years. The change in operating methods which petitioner argues constituted agency by Dentist Supply was directly caused by the war in which England, petitioner's domicile, was engaged. The war affected communications and exchange and import licenses. Petitioner could not, as before, obtain import licenses, and could not ship from England to many of its customers over the world. We think all of these facts and conditions highly significant in consideration of the question at hand. In short, considering the long continued relations, on a basis of vendor-vendee, between the two companies, and the interference with the operation of that arrangement, it appears more reasonable to think that the change entailed a mere enforced modification of the previous operation of vendor-vendee relation than to think that, without a definite contract, that relation was changed to one of principal and agent. The lack of a formal expression of a contract of agency is to us significant, and what was done appears not as agency, but as detail in carrying on the previous arrangement in a not greatly different way. Obviously, the fact that under the new arrangement the petitioner shipped the dental supplies directly to petitioner's customers instead of to the petitioner at London, is altogether insufficient to indicate agency as against a status of buyer-seller; for the petitioner could, as purchaser, as simply as if principal, ask for shipment directly to others rather than itself. As to arranging for insurance and export licenses and Treasury licenses, the evidence does not show that Dentist Supply had not previously done the same things; but in any event, such details are such as a vendor might reasonably attend to for its purchaser, and their performance is not convincing that there was a change in the mutual relationship to one of agency. A more serious thought arises with

reference to the activities of Dentist Supply in billing petitioner's customers at the retail price and remitting to the petitioner any amounts received to the extent of the excess over the wholesale price and actual disbursements. On all of the facts involved, however, we think such billing and receipt of money are not sufficient to indicate agency. Though Dentist Supply did bill the customers at rates set by petitioner, it billed the petitioner *as a purchaser*, for the wholesale price. The bills shown in evidence read *"sold to* The Amalgamated Dental Company, Ltd., London, England" (italics supplied), and they were offered as representative examples of the operations. In short, though performing some services for the petitioner because of the exigencies of war, Dentist Supply is affirmatively shown as *selling* to petitioner the thing involved in the whole transaction, i. e., dental supplies. That bills were sent also directly to the customers is explained, in our opinion, not by a contract of agency, but by the war-enforced necessity of not handling the matter through England because of shipping, lack of import licenses, and exchange restrictions; and we see the billing to the customers as a detail incidental to *purchase* of dental supplies rather than as proof of sale thereof by petitioner through Dentist Supply. The record does not indicate what contracts or correspondence passed directly between the petitioner and its customers, or whether in most cases the contracts of sale were made by the petitioner itself. But the petitioner, and not Dentist Supply, is shown to be in the position of collector, for Dentist Supply simply remitted any payments voluntarily made by petitioner's customers, with no responsibility for bills not paid by them. Payment was, as above seen, on the face of the bills, made *for dental supplies*—not for agency services. No charges were, in fact, made for those things done by Dentist Supply that were not done under the former arrangement. Petitioner says, however, that agency may be gratuitous. That is true, yet the fact that an alleged agency is gratuitously performed has probative effect, logically most particularly where the services may be mere incidents to relation, different from agency and of long standing—here the relation of purchaser and seller. Moreover, the law of gratuitous agency is summarized in 2 C. J. S. 1043 as follows:

An executory contract of agency requires consideration, but one who gratuitously undertakes to act as agent and enters on the performance of his duties, as such, is bound to complete the undertaking, notwithstanding lack of consideration.

An executory agreement to act as agent for another is ordinarily not binding on either party unless it is based on a sufficient consideration, and mutuality of obligation is essential. * * *

Dentist Supply, then, could not, in our view, have been forced, in the absence of a more definite agreement of agency than here appears, to continue to act as agent. Nothing in the record shows that the

wholesale price charged by Dentist Supply was not subject to change at any time. Thus it is seen that any gratuitous services performed by Dentist Supply were based upon each order or shipment of supplies ordered by petitioner or its customers, and could not have been further commanded, without consideration, by the petitioner—which in our opinion is indication that such gratuitous services were merely incidental to the *sales* for which petitioner was billed, because the wartime exigencies in effect required business to be transacted in that way. Petitioner could not import to England at all because it could not obtain import licenses, and in substance could not do it because of shipping conditions; and the financing of the matter was not feasible through England. We see the gratuitous services, in receiving the customers' money, of no financial burden to Dentist Supply (and of course assuring it of collecting its own money), as insufficient to indicate agency. The manager of petitioner's tooth department, on the witness stand, referring to what Dentist Supply had done, said: "* * * the Dentist's Supply Company was willing to render the service for us and has done so until now." This in our view indicates voluntary incidental services, not agency.

Other facts contribute to that conclusion. The petitioner was not shown to be qualified to do business in New York under its law. True, as petitioner suggests, business may be done in fact regardless of legal right, but we find meaning in the dearth of showing of compliance with such legal requirements by an old established institution doing as much "business" as contended for by petitioner. We hesitate to believe that it intentionally violated the New York law, or that, if it had an agent doing its business in New York, it was not advised of so simple a fact as necessity for compliance with state laws. The same is true, and in our opinion even more significant, with respect to the filing of capital stock tax returns for 1940, 1941, and 1942. These were filed February 26, 1943, by its attorney in fact, William L. Ashbaugh, who had been appointed in 1936, and was a partner of a well known firm of public accountants in New York City. On April 3, 1943, there was executed and filed by Ashbaugh for petitioner a claim for abatement of tax to the extent of $762.51 penalties for late filing, and the delay in filing was explained as "due to the fact that it [petitioner] was not aware that it was classifiable as a resident foreign corporation under the Internal Revenue Code. As soon as taxpayer realized that a return might be required it caused returns to be filed. Under the circumstances taxpayer believes that no penalties should have been asserted and it respectfully requests that penalties should be abated." We can not consider it reasonable to believe that a company of large affairs, as is petitioner, represented since 1936 by a partner in a prominent firm of public accountants,

did not realize until February 1943 that it was classifiable as a resident foreign corporation and so required to file capital stock tax return, if since May 1940 it had had an agent transacting large amounts of business for it in New York. On the contrary, we see it as wholly reasonable to think that the petitioner did not realize it had any such agent, that it did not consider that there was such agency. Agency is a matter of both intention and fact, but lack of intent is plainly of high importance. The idea of agency appears here as an afterthought, rather than a prearranged status.

Petitioner on brief advances the theory that the respondent is inconsistent in the position taken herein with his attitude taken as to capital stock tax returns. We do not so view the matter. The returns were filed, out of time, and penalties were assessed, and abatement denied. But we see in this no inconsistency such as to affect our conclusion here. The returns contained nothing to indicate any question about tax liability. Estoppel is not pleaded. It is not shown that in insisting on penalties for late filing the Commissioner was determining or considering the question now posed—whether business was engaged in by the petitioner in the United States. The reception of gift tax returns and collection of gift tax does not preclude a later position by the respondent that there was no reality in the gift. *Guaranty Trust Co.* v. *Commissioner*, 98 Fed. (2d) 62.

We conclude and hold that the petitioner was not engaged in trade or business within the United States, within the language of sections 231 (b) or 14 (c) of the Internal Revenue Code, but is, within the language of section 231 (a), a nonresident corporation.

Reviewed by the Court.

*Decision will be entered for the respondent.*

Murdock and Tyson, *JJ.*, dissent.