OPINION. Arundell, Judge'. The principal issue in this case is whether the petitioner, a foreign corporation, during the taxable years 1940 to 1943, inclusive, realized “fixed or determinable annual or periodical” income from sources within the United States within the meaning of section 231 (a) of the Internal Revenue Code.[1] As the evidence clearly establishes that during the years in issue petitioner maintained no office or place of business in this country and the parties are in agreement that petitioner was not engaged in trade or business within the United States, we are not here concerned with the question of whether petitioner is taxable under section 231 (b). Our first inquiry must necessarily be directed to the actual source of the petitioner’s income, which the respondent seeks to tax as being from sources within the United States. Although the details of the arrangement between petitioner and American Timken were somewhat different in 1940 than in subsequent years, it seems clear from the evidence that in all transactions title to the purchased bearings passed directly from American Timken to petitioner’s distributors and customers and the collection of the sales price was made by American Timken. In the circumstances, we do not believe that it can be held that there was a purchase within the United States by petitioner and thereafter a sale from petitioner to its customers outside the United States. We think it is equally clear that American Timken was not the agent of petitioner in the United States. See Amalgamated Dental Co., Ltd., 6 T. C. 1009. Respondent suggests that the arrangement between the companies, which was a temporary means of conducting business under war conditions, constituted a profit-sharing agreement. The record provides no foundation for such an interpretation, which is obviously in conflict with the respondent’s admission that petitioner was not engaged in trade or business in this country. Moreover, it is plain that petitioner’s income was in no way related to the profit realized, from the sale of bearings to its distributors and customers by American Timken, but was measured at first by the difference between American Tim-ken’s price to petitioner and the price received from petitioner’s distributors and customers and later by a fixed percentage of gross sales which ^experience had showed was the approximate equivalent of that difference. Where the income of a taxpayer is derived from the sale of personal property, the situs of the sale and the “source” of the income attributable to the sale is the place where the seller surrenders all his right, title, and interest to the buyer. East Coast Oil Co. v. Commissioner, 31 B. T. A. 558; affd., 85 Fed. (2d) 322; Ronrico Corporation, 44 B. T. A. 1130; G. C. M. 25131, C. B. 1947-2, p. 85. In the present case, the bearings were shipped to the consignee f. o. b. Canton, Ohio, title passing in Canton from American Timken to the Australian distributor or purchaser, and if we were concerned here with the source of the income of American Timken, we would of course have no difficulty in placing the sources of its income as within the United States. But we do not regard the fact that the situs of the sales was within the United States as determinative of the source of petitioner’s income. Although a manufacturer’s profits may be the direct result of the production and sale of its products, it does not follow that such sales constitute the source of the income of many persons associated with the sales such as its salesmen, buyers, agents, and officers whose earnings are attributable to other considerations such as their sales ability or technical knowledge. This is true even though the compensation received may be measured by the amount of sales. It is the situs of the activity or property which constitutes the source of the compensation paid and not the situs of the sales by which it is measured that is of critical importance. See Mertens, Law of Federal Income Taxation, vol. 8, sec. 45.27, p. 289. Petitioner had established a sales force by appointing agents to handle the sale of bearings in its territory and had at its own expense sent consulting engineers to Australia to induce industrial users to incorporate Timken roller bearings into their original design of machinery. These sales facilities produced orders for bearings during the years in issue which were filled from petitioner’s production in England, as well as the orders which were forwarded direct to American Timken. Petitioner and its agencies maintained contact with users of Timken bearings, procured orders, fixed the prices and terms of the sales of bearings made in its territory, and classified the orders, at no expense to American Timken. It is also clear that American Timken could not have sold its bearings to petitioner’s distributors and cutomers without the petitioner’s consent, unless it chose to violate the agreement between the companies in regard to their respective territories. American Timken was petitioner’s largest stockholder and the record shows that in 1940 and 1941 it was disturbed over the possibility that petitioner’s inability to supply sufficient bearings to its Australian users would result in its competitors’ making gains that would threaten the postwar demand for Timken roller bearings in that country. It appears that it was with considerable reluctance that petitioner agreed to let American Timken supply its customers even under these conditions. As we have already stated, the amount paid by American Timken to petitioner was a rough approximation of the difference between the price petitioner would have paid American Timken and the price charged by the latter to petitioner’s distributors and customers for the same bearings. The arrangement was a temporary one, forced by the war, and it was evidently the desire of both companies that from a profit standpoint they would both receive out of the transaction substantially what they would have received under normal peacetime operations. It seems evident that whatever petitioner did to warrant the payment to it of the so-called commissions was performed outside of the United States. The Commissioner and the petitioner agree that the latter was not engaged in trade or business within the United States and had no office or place of business within this country. The bearings were sold directly by American Timken to petitioner’s distributors and customers and petitioner itself never had either legal or beneficial title to the goods at any point in the transactions. As we view the matter, the sums paid petitioner were in recognition of the fact that the orders for bearings came as a direct result of the activities of petitioner’s agents in its allotted territory and the further fact that the bearings were being sold in a market exclusively reserved to the petitioner under a long standing agreement between the companies. In our opinion, the source of petitioner’s income was in the British Empire, which was the situs of the sales activities of petitioner’s agents and the situs of petitioner’s exclusive right to sell Timken bearings to customers. See Piedras Negras Broadcasting Co., 43 B. T. A. 297; affd., 127 Fed. (2d) 260; Sabatini v. Commissioner, 98 Fed. (2d) 753; and Korfund Co., 1 T. C. 1180. We, therefore, conclude and hold that the amounts received by petitioner from American Timken in the taxable years in issue were from sources without the United States and are not taxable to the petitioner under the provisions of section 231 (a) of the Internal Revenue Code. In view of our conclusion on this point, a determination of whether the sums paid petitioner were fixed or determinable annual or periodical income and whether petitioner is liable for a 25 per cent penalty for failure to file timely returns is unnecessary. Reviewed by the Court. Decision will be entered for the 'petitioner. Hill, J., dissents. SEC. 231. TAX ON FOREIGN CORPORATIONS. (a) Nonresident Corporations.— (1) Imposition op tax. — There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by séctions 13 and 14, upon the amount received by every foreign corporation not engaged in trade or business within the United States from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 30 per centum of such amount * * *