THE LINEN THREAD COMPANY, LTD., PETITIONER, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15790.    Promulgated April 28, 1950.

*John P. Lipscomb, Jr., Esq.,* and *Prew Savoy, Esq.,* for the petitioner.

*James C. Maddox, Esq.,* for the respondent.

726

OPINION.

JOHNSON, *Judge*: Petitioner urges that its income tax liability beginning September 30, 1940, through September 30, 1945, is to be computed on the basis of a fiscal year ending September 30. Respondent contends that petitioner's annual accounting period for the taxable years here involved, 1941, 1943, and 1944, is a calendar year and determined deficiencies accordingly.

Petitioner does not contest respondent's determination that it was taxable in 1941 as a nonresident foreign corporation under section

231 (a) (1), Internal Revenue Code,[1] on amounts received from sources within the United States. If petitioner's taxable year 1941 began before January 1, 1941, it is taxable on such amounts at the rate of 15 per cent. If petitioner's taxable year 1941 began after December 31, 1940, the rate is 27½ per cent. (See section 3 (c) and section 9, Revenue Act of 1940, and sections 106 and 118, Revenue Act of 1941.) However, if petitioner is correct in its assertion that respondent erred in determining deficiencies on the basis of a calendar year, then this Court can only hold in this proceeding that there are no deficiencies for the calendar years 1941, 1943, and 1944, since there is no question before us of petitioner's tax liability for a fiscal year or years. *Estate of Cyrus H. K. Curtis*, 36 B. T. A. 899, 903; *Oklahoma Contracting Corporation*, 35 B. T. A. 232, 238.

Petitioner's books in Glasgow, Scotland, from its inception in 1898, have always been kept on the accrual basis and on the basis of a fiscal year ending September 30. On the other hand, petitioner's books in the United States from the opening of an American office and the appointment of a resident agent in 1937 through 1946, when the office was discontinued, were kept on the accrual basis and on the basis of a calendar year.

For the years 1925 through 1936 petitioner's returns were filed on a fiscal year basis. For the years 1937 through 1944 petitioner's original returns were filed on a calendar year basis.

Referring to the books kept in the United States as mere "records" and to the books kept in Glasgow as "*the* books of petitioner," petitioner maintains that it has always kept its books of account on a fiscal year basis, that respondent was never requested to permit a different method of accounting and never authorized a change, and that no change was ever made. Accordingly, petitioner argues that under section 41 of the code [2] it was required to file its returns on the

---

[1] SEC. 231. TAX ON FOREIGN CORPORATIONS.

(a) NONRESIDENT CORPORATIONS.—

(1) IMPOSITION OF TAX.—There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by sections 13 and 14, upon the amount received by every foreign corporation not engaged in trade or business within the United States and not having an office or place of business therein, from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of * * * per centum of such amount * * *.

[2] SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. If the taxpayer's annual accounting period is other than a fiscal year as defined in section 48 or if the taxpayer has no annual accounting period or does not keep books, the net income shall be computed on the basis of the calendar year.

basis of a fiscal year ending September 30, and that respondent was required to compute its tax liability on that basis for all the years here involved.

The books or records kept in the United States consisted of a journal, cash book, and ledger, and they recorded the receipts and expenditures of petitioner's American office. Though it now designates them as "records," petitioner has in the past referred to them as "books." On each of petitioner's income tax returns for the calendar years 1937 through 1943 it was stated, under "Questions": "The corporation's books are in care of William J. MacInnis, Located at 122 East 42nd Street, New York, N. Y.," and on the 1944 return: "The corporation's books are in care of Prew Savoy, 630 Munsey Building, Located at Washington, D. C."

No reason appears why these records kept in the United States may not properly be designated as books of petitioner. No assertion has been made by petitioner that they did not clearly reflect such of its income as was taxable by the United States during the taxable years here involved. Indeed, the fact that petitioner itself relied on these books in reporting that income indicates that they did clearly reflect it. Perhaps the books which were simultaneously kept in Scotland during the same years reflected that income just as clearly, though we may perhaps assume that such books employed the British monetary system and reflected some or much income in which respondent was not interested. However, we would not undertake to make a comparison, neither set of books having been introduced in evidence, and a comparison is not necessary. Whatever other books petitioner kept in other countries were of no concern to respondent, so long as petitioner kept regular books in the United States for United States income tax purposes, to which respondent had immediate access, which clearly reflected such of its income as was taxable by the United States. It follows that, beginning in 1937, when these latter books were instituted, respondent did not err in accepting calendar year returns based on these books and in determining deficiencies on the same basis.

But petitioner contends that respondent was never requested to permit a change in the period of accounting and never authorized a change, and that therefore no change could have been made. We see no merit in this contention. A change in a taxpayer's books, together with a change in the basis of its returns, which returns have been accepted by the Commissioner, has been held tantamount to a request for permission to change and the approval of such change. *Jonas Cadillac Co.*, 16 B. T. A. 932; affd. (C. C. A., 7th Cir., 1930), 41 Fed. (2d) 141; *Clark Brown Grain Co.*, 18 B. T. A. 937. See also *United States ex rel. Greylock Mills* v. *Blair* (App. D. C., 1923), 293 Fed. 846; *Norwich Woolen Mills Corporation*, 18 B. T. A. 303.

Here petitioner instituted books with a calendar year period of accounting in 1937 and filed its returns on a calendar year basis from 1937 to 1944, which returns were accepted by respondent. Moreover, on the basis of such returns, petitioner's income tax liability for the calendar years 1937 and 1938 was redetermined in *Linen Thread Co., Ltd.* v. *Commissioner* (C. C. A., 2d Cir., 1942), 128 Fed. (2d) 166, affirming a memorandum opinion and decision of the Board of Tax Appeals in Docket No. 103475; certiorari denied, 317 U. S. 673, and for the calendar years 1939 and 1940 by this Court in *Linen Thread Co., Ltd.*, 4 T. C. 802; affd. (C. C. A., 2d Cir., 1945), 152 Fed. (2d) 625. These facts are certainly tantamount to a request to change and the approval of such change within the authority of the cases cited in the previous paragraph.

Our conclusion is, therefore, that respondent did not err in computing deficiencies for 1941, 1943, and 1944 on a calendar year basis. Nor is this conclusion altered by the fact that on June 30, 1947, (shortly before respondent mailed on August 25, 1947, notice of the above deficiencies) petitioner filed amended returns for the fiscal years ended September 30, 1941, through September 30, 1946, on the basis of a fiscal year ending September 30. Even if we were to assume, *arguendo*, that because of the books kept simultaneously in Scotland and in the United States petitioner had an election to file either on the fiscal or the calendar year basis, it would still be our conclusion on the facts that respondent is under no obligation now to compute petitioner's tax liability for the periods here involved on a fiscal year basis. As stated by the Court of Appeals of the District of Columbia in *United States ex rel. Greylock Mills* v. *Blair, supra:*

\* \* \* It will be apparent, at once, that if taxpayers were to be permitted, several years after voluntarily filing a return upon one basis, to compel the commissioner to accept returns for the same period upon a different basis, endless and needless confusion would result, and the real purpose of the law measurably defeated.

See also *Kunkel & Co.*, 3 B. T. A. 133.

Nor are *Brooklyn City R. Co.*, 27 B. T. A. 77; affd. (C. C. A., 2d Cir.), 72 Fed. (2d) 274, or *Estate of Cyrus H. K. Curtis, supra*, applicable on this question. Both of those cases hold that, where the books are regularly kept on a fiscal year basis, the Commissioner does not have the right to determine a deficiency on any other basis, regardless of how the taxpayer files his returns. But here petitioner from 1937 to 1944 regularly kept two sets of books, one set in Scotland on a fiscal year basis, the other set in the United States on a calendar year basis. We have stated our reasons for holding that the Commissioner was within his rights in determining deficiencies on a calendar year basis, in accordance with the books kept in the United States and with the returns following those books.

The second question here at issue is whether petitioner was "engaged in trade or business within the United States" during the taxable years 1943 and 1944, so as to qualify as a resident foreign corporation under section 231 (b) of the code, as amended by section 160 (d) of the Revenue Act of 1942.[3] Petitioner maintains that it was so engaged and does so qualify. Respondent maintains that it was not so engaged and that it is therefore taxable as a nonresident foreign corporation under section 231 (a) (1) of the code, as amended by sections 160 (e) and 107 of the Revenue Act of 1942.[4]

It has been previously decided that petitioner was taxable as a nonresident foreign corporation, not as a resident foreign corporation, during the calendar years 1937 through 1940, for the reason that it was not "engaged in trade or business within the United States" and did not have "an office or place of business therein" within the requirements of section 231 (b) of the Revenue Acts of 1936[5] and 1938.[6] *Linen Thread Co., Ltd.* v. *Commissioner*, 128 Fed. (2d) 166; certiorari denied, 317 U. S. 673; *Linen Thread Co., Ltd.*, 4 T. C. 802; affd., 152 Fed. (2d) 625. As we have already pointed out, petitioner does not contest respondent's determination that it was taxable as a nonresident foreign corporation during the taxable year 1941. Petitioner's activities in the United States in 1943 did not differ discernibly from its activities in 1937 through 1941, except as to two transactions occurring in 1943. On the basis of these two transactions petitioner claims that it was engaged in trade or business within the United States during the taxable year 1943. Petitioner also maintains that it had the intent to do business within the United States during 1944, that it was prevented from doing so only by wartime restrictions, that there was a pattern of doing business from 1943 through 1946, and that therefore it was engaged in trade or business within the United States during the taxable year 1944.

---

[3] SEC. 231. TAX ON FOREIGN CORPORATIONS.

\* \* \* \* \* \* \*

(b) RESIDENT CORPORATIONS.—A foreign corporation engaged in trade or business within the United States shall be taxable as provided in section 14 (c) (1) and section 15.

[4] SEC. 231. TAX ON FOREIGN CORPORATIONS.

(a) NONRESIDENT CORPORATIONS.—

(1) IMPOSITION OF TAX.—There shall be levied, collected, and paid for each taxable year, in lieu of the tax imposed by sections 13 and 14, upon the amount received by every foreign corporation not engaged in trade or business within the United States, from sources within the United States as interest (except interest on deposits with persons carrying on the banking business), dividends, rents, salaries, wages, premiums, annuities, compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income, a tax of 22 per centum of 30 per centum of such amount \* \* \*.

[5] (b) RESIDENT CORPORATIONS.—A foreign corporation engaged in trade or business within the United States or having an office or place of business therein shall be taxable without regard to the provisions of subsection (a), but the normal tax imposed by section 13 shall be at the rate of 22 per centum instead of at the rates provided in such section.

[6] (b) RESIDENT CORPORATIONS.—A foreign corporation engaged in trade or business within the United States or having an office or place of business therein shall be taxable as provided in section 14 (e) (1).

One of the two transactions in 1943 on which petitioner relies as sustaining its claim that it was doing business in the United States consisted of a sale of crochet thread to Marguerite G. Brooks in New York, New York. Briefly, this transaction consisted of an order from Miss Brooks to petitioner in Scotland, the shipment of the thread to petitioner's New York office, the delivery of the thread to Miss Brooks by petitioner's resident agent, and the collection by him of a check for $129.54, the amount due from her on the shipment, including postage, insurance, etc. Petitioner's New York office was billed for the goods on an invoice from W. & J. Knox, Ltd., in Scotland, the manufacturer and a subsidiary of petitioner, and transferred $102 to petitioner in Scotland to cover this invoice. The New York office had nothing to do with soliciting this sale, and was only apprised of it by letter from petitioner in Scotland.

The other transaction consisted of a shipment from petitioner in Scotland to petitioner's wholly owned subsidiary in Paterson, New Jersey. The resident agent in New York had nothing to do with soliciting this sale or with handling the goods. He did, he stated, only "the paper work" on the transaction.

The total amount of these two sales, as reported by petitioner in its 1943 calendar year return, was $785.41, with $633.83 cost of goods sold, and $151.58 gross profit from sales. The only other item of income reported by petitioner for the calendar year 1943 was "Dividends $632,500."

It is petitioner's position that these two sales were made by its New York office and that therefore it, petitioner, was engaged in trade or business within the United States during the taxable year 1943. The evidence is not clear that the proceeds of the second of these two sales were actually received by petitioner's New York office, but, even assuming facts most favorable to petitioner, that title to the goods in both sales passed in New York, it is nevertheless our conclusion that petitioner's activities in this country in connection with these two transactions did not constitute engaging in trade or business within the United States within the meaning of the statute.

In neither case did petitioner's resident agent solicit the sale. In the Brooks sale, the resident agent merely delivered the goods from the post office to the customer, collected the amount due from her, and remitted the value of the shipment to petitioner in Scotland, all in accordance with instructions from petitioner in Scotland, where the sale had been negotiated. In the other sale the resident agent did not handle the goods at all. Petitioner has not shown a business purpose in either case, but only a tax purpose, in not shipping the goods directly from Scotland to the customer and receiving the proceeds in Scotland directly from the customer, without the intervention

of the New York office at all. Such a procedure would have been much simpler than what was done, from the standpoint of bookkeeping and correspondence. To hold that petitioner was engaged in trade or business within the United States on the strength of two sales, where in one sale the resident agent was only the deliveryman and in the other he did only the "paper work," merely because title to the goods sold was, for no business reason, made to pass in this country, would be "to exalt artifice above reality," in the language of *Gregory* v. *Helvering*, 293 U. S. 465.

That these two sales were not made by petitioner in the United States through its New York office for business reasons is clear from other facts. After the establishment of that office in 1937 petitioner had no reported sales on its returns until these two sales in 1943. Until that time petitioner's entire reported income for Federal tax purposes was from dividends and interest. The real business of petitioner, the "doing of what [it] was principally organized to do in order to realize a profit," in the phrase used in *Scottish American Investment Co., Ltd.*, 12 T. C. 49, 59, was the sale in Scotland of manufactured goods and the collection of income from investments. It sold its manufactured goods in Scotland to its American subsidiary the Linen Thread Co., which carried on business in the United States. Petitioner's American office from its inception was used for the purpose of collecting interest and dividends from American investments. The office was small, was not equipped for selling, and employed no salesmen. The resident agent had no instructions to go out and make sales. His function even in the Brooks sale, as we have pointed out, was merely to deliver a parcel and collect payment. It was clearly not the purpose for which the American office was established to make sales in the United States. The character of the activities of that office and the purpose for which that office was established are determinative of whether petitioner was engaged in trade or business within the United States. *Scottish American Investment Co., Ltd., supra.*

Moreover, even if we were to assume that petitioner had a business purpose in involving its American office in these two sales, it would still be our conclusion that these two isolated transactions, profits from which constituted such a minute part of petitioner's total income from American sources in 1943, did not constitute engaging in trade or business in the United States within the meaning of section 231 (a) of the code. The test is both a quantitative and a qualitative one. *Scottish American Investment Co., Ltd., supra.* The phrases "engaged in business," "carrying on business," and "doing business" were defined in *Lewellyn* v. *Pittsburgh, B. & L. E. R. Co.* (C. C. A., 3d Cir., 1915), 222 Fed. 177. It was stated therein, p. 185: "The three

expressions, either separately, or connectedly, convey the idea of progression, continuity, or sustained activity." See also *Daily Journal Co.* v. *Commissioner* (C. C. A., 9th Cir., 1943), 135 Fed. (2d) 687; *Commissioner* v. *Boeing* (C. C. A., 9th Cir., 1939), 106 Fed. (2d) 305; *European Naval Stores Co.*, *S. A.*, 11 T. C. 127. There is nothing of continuity or of sustained activity in these two small isolated transactions so as to warrant our regarding petitioner as engaged in trade or business in the United States through its New York office on the strength of them.

Nor is other evidence lacking that petitioner was not so engaged during 1943 and 1944. In a statement attached to its original and amended 1943 calendar year returns, petitioner stated that it: .

     * * * was unable to transact business in the commercial sense, except for one sale in the State of New York, which was the only business it was able to transact, due to war conditions beyond its control, so that it is not brought within the purview of the capital stock provision of the Revenue Act.

The other transaction, with the Linen Thread Co., is mentioned in a memorandum accompanying the amended return. Similarly, in a statement attached to its 1944 calendar year return petitioner stated that it:

     * * * was unable to transact business in the commercial sense during the year 1944 due to war conditions beyond its control, so that it is not brought within the purview of the capital stock provision of the Revenue Act.

Here petitioner by its own admission was not engaged in business within the United States in 1943 and 1944 for capital stock tax purposes, and should not be regarded as so engaged for income tax purposes. The test of liability for income tax, excess profits tax, and capital stock tax, in so far as such taxes are based upon, or measured by, engaging in or doing business within the United States, is identical. G. C. M. 17014, XV-2 C. B. 317.

It is also significant that petitioner was not authorized to do business in the State of New York in 1943, when the two transactions above referred to were ascribed by it to its New York office. In the latter part of 1943 an attempt was made to procure a New York license, but the application was rejected because of the similarity of names of the petitioner and its wholly owned American subsidiary. As said by this Court in *Amalgamated Dental Co., Ltd.*, 6 T. C. 1009, 1017:

     * * * The petitioner was not shown to be qualified to do business in New York under its law. True, as petitioner suggests, business may be done in fact regardless of legal right, but we find meaning in the dearth of showing of compliance with such legal requirements by an old established institution doing as much "business" as contended for by petitioner. We hesitate to believe that it intentionally violated the New York law, or that, if it had an agent doing its business in New York, it was not advised of so simple a fact as necessity for compliance with state laws. * * *

Not having the status of being engaged in trade or business within the United States in 1943, petitioner did not acquire that status by mere intent to so engage in 1944. Actually engaging in business is essential. Cf. *McCoach* v. *Minehill & S. H. R. Co.*, 228 U. S. 295. We have found, therefore, that petitioner was not engaged in trade or business within the United States in 1944.

On the third question here at issue, since it is our conclusion that petitioner was a nonresident foreign corporation during the taxable years here involved, we hold that it is not entitled to any deductions, but is taxable upon its gross income from sources within the United States. Sec. 231 (a) (1), I. R. C.; Regulations 111, secs. 29.231–1 (a) and 29.232–1 (a).

Reviewed by the Court.

*Decision will be entered for the respondent.*

