ATLAS OIL AND REFINING CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Dockets Nos. 40929, 40930.   Filed June 14, 1954.

*Floyd F. Toomey, Esq., Vincent H. Malony, Esq., John P. Lipscomb, Jr., Esq., Waymon G. Peavy, C. P. A.,* and *Thomas J. Green, C. P. A.,* for the petitioner.

*John J. O'Toole, Esq.,* and *William G. O'Neill, Esq.,* for the respondent.

554

OPINION.

RAUM, *Judge:* 1. The petitioner kept its books on the basis of the calendar year but filed its tax returns on the basis of a fiscal year

ended November 30. In a prior proceeding before this Court, it was decided, in petitioner's favor, that the deficiencies there proposed for fiscal years ended November 30, 1942, and November 30, 1943, were incorrectly determined on a fiscal year basis. *Atlas Oil & Refining Corporation*, 17 T. C. 733. The deficiencies involved here were determined by respondent for the calendar years 1942 and 1943 and he is now confronted with the argument that the assessment of such deficiencies is barred by the statute of limitations.

In support of its contention, petitioner relies on cases such as *Mabel Elevator Co.*, 2 B. T. A. 517 (see also *United States* v. *Mabel Elevator Co.*, 17 F. 2d 109 (D. Minn.)), and *Paso Robles Mercantile Co.*, 12 B. T. A. 750, affirmed 33 F. 2d 653 (C. A. 9), certiorari denied 280 U. S. 595. In the *Mabel Elevator Co.* case, the taxpayer kept its books on a calendar year basis but filed its tax returns on a fiscal year basis. The asserted deficiency there was for the period July 31, 1917, through December 31, 1917. No return was filed specifically for that period, but a return was filed for the fiscal year August 1, 1917, through July 31, 1918. The contention of the Commissioner there was that since a calendar year return was required by law, and since the return filed did not comply with the law, the filed return, although it covered the period in issue, could not operate to start the running of the statute of limitations. Contrary to that position, it was held that the statute of limitations had run. The Board explained its conclusion as follows (p. 519) :

The return filed purported to and did include the income of the taxpayer for the period in question. In the absence of any evidence or claim that such return was false or fraudulent with intent to evade tax, it became the duty of the Commissioner to determine, within the time provided by law, whether or not the return was erroneous in any respect.

In the *Paso Robles* case, the taxpayer kept its books on a fiscal year basis and filed its tax returns on a calendar year basis. It was there held that the statute of limitations had not run on the fiscal year ended January 31, 1919. The Board stated (12 B. T. A. at 753) :

In our opinion the statute of limitations does not begin to run until a return or returns have been filed which at least purport to cover or include the period involved. Where there are two returns which must be considered, each of which includes a part of the taxable year, the period of limitation must be considered as to both and the statute does not run until it expires as to both these returns.

The analogy between the *Paso Robles* case and the instant case is immediately apparent. Applying the principle of that case here we must conclude that the statute of limitations for the calendar years 1942 and 1943 began to run on the filing of the returns for the fiscal years ended November 30, 1943, and November 30, 1944, respectively,

for at those times the Commissioner was in possession of facts, required by tax returns, for the entire 12 months of each of the respective calendar years. The respondent does not deny that such is the effect of application of the *Paso Robles* case and that if the principle of that case is applied here the statute of limitations has run.

Respondent, however, seeks to distinguish the *Paso Robles* case from the one at bar by contending that its theory here is one of "no return" and that theory was not pressed in *Paso Robles*. Respondent fails to recognize however that a "no return" argument was made in *Mabel Elevator Co.* and rejected by the Board. Indeed, the rationale of those cases and of others following them (cf. *National Shirt Shops* v. *United States*, 57 F. 2d 925 (Ct. Cl.); *Lowenstein Brothers Garment Co.*, 13 B. T. A. 446; *United States* v. *National Tank & Export Co.*, 45 F. 2d 1005 (C. A. 5); see also *Zellerbach Paper Co.* v. *Helvering*, 293 U. S. 172) is that when the Commissioner is given information in properly executed form covering all of the period in issue the statute of limitations begins to run, even though the taxpayer may have mistakenly filed returns for improper periods. The cases are decided on the theory that the improper returns pieced together provide the Commissioner with the information necessary to determine the true tax liability of the taxpayer within the period provided by law. That rationale is incompatible with an argument such as the one advanced by respondent that since the return was not the one required by law, "no return" was filed and the statute of limitations never began to run.[1]

2. The Commissioner contends, alternatively, that even if the returns are "pieced together" in such a manner as to have caused the statute of limitations to begin to run, as the taxpayer contends, we should now hold that by reason of the prior proceedings (17 T. C. 733) the statutory notices of deficiency were mailed prior to the expiration of the period of limitations as extended by such proceedings. The Commissioner argues that pursuant to section 272 (f) of the Internal Revenue Code,[2] the mailing of the notices of deficiency for the

---

[1] *E. D. Gensinger*, 18 T. C. 122, affirmed 208 F. 2d 576 (C. A. 9), relied on by respondent is distinguishable. There the return filed was for the period January 1, 1943, to July 7, 1943. It was agreed that the correct taxable period was the calendar year 1943. We held that the return filed was "not the return required by law and did not serve to start the running of the statutory period for assessment and collection of any tax for the calendar year 1943." 18 T. C. at 133. However, no return was filed by the corporation that covered the remaining months in 1943. In the case at bar, returns were filed which covered all of the period before us.

[2] SEC. 272. PROCEDURE IN GENERAL.

(f) FURTHER DEFICIENCY LETTERS RESTRICTED.—If the Commissioner has mailed to the taxpayer notice of a deficiency as provided in subsection (a) of this section, and the taxpayer files a petition with the Board within the time prescribed in such subsection, the Commissioner shall have no right to determine any additional deficiency in respect of the same taxable year, * * *

fiscal years 1942 and 1943 and the commencement of the prior action before this Court involving the liability of this taxpayer for those fiscal years prohibited the determination of deficiencies for the calendar years here involved, and that therefore, in accordance with section 277,[3] the running of the statute of limitations was suspended while the prior proceedings were pending and for 60 days thereafter. We do not agree.

The essence of the holding in the prior case is that this Court was without authority to consider the correctness or incorrectness of any proposed deficiency with respect to the fiscal years because deficiencies could be determined only on a calendar year basis. And since the deficiency notices were predicated on a fiscal year basis, this Court had no power to consider any possible deficiencies for the calendar years which overlapped or were comprehended within the fiscal years. The jurisdiction of this Court is limited by statute to consideration of the taxable years covered by the notice of deficiency, section 272 (g), Internal Revenue Code, and we have made it plain that such jurisdiction does not embrace any periods other than the precise ones for which the Commissioner determined deficiencies. *Estate of Cyrus H. K. Curtis*, 36 B. T. A. 899, 903; cf. *Linen Thread Co., Ltd.*, 14 T. C. 725, 731. Accordingly, this Court was without authority in the prior proceedings to approve deficiencies either for the fiscal years or for the calendar years.

It is basic, however, that the statute of limitations was suspended by section 277 only for such taxable years as were properly before the Court in the prior proceedings. Similarly the Commissioner was prohibited by section 272 (f) only from mailing further notices of deficiency "in respect of the same taxable year[s]" that were involved in the prior action. There can be no question that a taxable year ended November 30 is different from a taxable year ended December 31. The Code itself provides that the taxable year of a taxpayer shall be either a fiscal year or a calendar year, thus distinguishing between them. Secs. 41 and 48, I. R. C. In the circumstances of such clear statutory distinctions between fiscal years and calendar years we can only conclude that the statute of limitations for the calendar years 1942 and 1943 was not tolled by the filing of the petitions to this Court contesting deficiencies determined for the fiscal years ended

---

[3] SEC. 277. SUSPENSION OF RUNNING OF STATUTE.

The running of the statute of limitations provided in section 275 or 276 on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under section 272 (a)) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Board, until the decision of the Board becomes final), and for sixty days thereafter.

November 30, 1942, and November 30, 1943. And similarly we think that the Commissioner was not prevented by section 272 (f) from asserting deficiencies in taxes against this taxpayer for the calendar years 1942 and 1943.

3. The Commissioner contends further that petitioner is precluded from relying upon the statute of limitations by reason of a principle akin to estoppel. His argument, in large part, is based upon the opinion in *R. H. Stearns Co.* v. *United States*, 291 U. S. 54.

The taxpayer in the *Stearns Co.* case requested the Commissioner to refrain from collecting what appears to have been an admitted deficiency until certain claimed overpayments for other years had been ruled upon. Consents to extend the limitations period were executed by the taxpayer and the deficiency was later collected by crediting part of a refund due the taxpayer against the amount owed, as was contemplated by the taxpayer's request. It was discovered some time thereafter that one of the consents had not been timely signed by the Commissioner and the period of limitations had expired prior to the collection of the deficiency. The taxpayer then brought an action for a refund of the deficiency which it alleged had been unlawfully collected. The Supreme Court held that no refund was due. The language of the opinion on which the Commissioner here relies is as follows (291 U. S. at pp. 61–62) :

The applicable principle is fundamental and unquestioned. "He who prevents a thing from being done may not avail himself of the nonperformance which he has himself occasioned, for the law says to him, in effect: 'This is your own act, and therefore you are not damnified' " * * * Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. The label counts for little. Enough for present purposes that the disability has its roots in a principle more nearly ultimate than either waiver or estoppel, the principle that no one shall be permitted to found any claim upon its own inequity or take advantage of his own wrong. * * * A suit may not be built on an omission induced by him who sues. * * *

The Court there considered that, since the taxpayer had brought the situation into being by requesting delay in the collection of the deficiency, it could not take unfair advantage of the Government because of a situation created by itself.

The difficulty with the Commissioner's argument here is that we can find no error or wrong committed by the taxpayer which can form the basis for the application of estoppel or of a kindred doctrine. Admittedly, the taxpayer was in error in filing fiscal year returns rather than calendar year returns. In the course of its conferences with the Commissioner, however, it contended that it was wrong and that its tax liability should be computed on the basis of calendar years. This the Government steadfastly refused to do and the matter was litigated before this Court; the taxpayer's position was sustained.

It appears then that the taxpayer attempted to correct the situation in its dealings with the Government, and that it was the Government which prevented the calendar year-fiscal year issue from being resolved earlier. It is difficult, in these circumstances, to say that the present situation was created by the taxpayer and that it is therefore precluded from relying upon limitations provisions which are otherwise applicable. And it becomes increasingly difficult to support such position in the light of the fact that the Commissioner, having full knowledge, could have prevented the expiration of the limitations period by issuing statutory notices of deficiency for both calendar years and fiscal years.

We think then that the case at bar does not present a situation for the application of the *Stearns Co.* doctrine.

4. The Government argues, finally, that the limitations periods have not expired by reason of consents executed by the parties extending such periods. As shown by our findings, consents were executed (1) for the fiscal year ended November 30, 1942, the last consent to expire June 30, 1949; (2) for the fiscal year ended November 30, 1943, the last consent to expire June 30, 1949; and (3) for the fiscal year ended November 30, 1944, the last consent to expire June 30, 1954.

In the first place, all of these consents were executed on a fiscal year basis. None of them purported to extend the period of limitations with respect to either of the 2 calendar years here involved. True, certain testimony of petitioner's representatives indicates that no thought was given at the time as to whether the limitations periods were being extended for fiscal or calendar years, the objective being to extend the periods for the purpose of finally settling petitioner's tax liability. However, the difficulty with making inquiry into such intent is that the consents were clear and unambiguous. They undertook to extend the periods of limitation for "the taxable year ended November 30 * * *." And since the consents were unamibiguous, we must take them as we find them. As was said in *Constitution Publishing Co.*, 22 B. T. A. 426, 428:

We are without power of a court of equity and we can not substitute another consent for that expressed by the parties. We can not reform the instrument, although both parties intended something else. * * *

Cf. *A. L. Wilson Co.*, 24 B. T. A. 1056; *Commissioner* v. *Leasing & Building Co.*, 46 F. 2d 2 (C. A. 6).

In the second place, the consents with respect to the fiscal years ended November 30, 1942, and November 30, 1943, expired on June 30, 1949, prior to the mailing of the deficiency notices herein. The only unexpired consents outstanding at the time of the mailing of the deficiency notices related to the fiscal year ended November 30, 1944— a fiscal year that embraced only 1 month of the second of the 2 calendar

years now before the Court. There were thus no unexpired consents which, on any theory, could affect the calendar year 1942; and consents affecting the first 11 months of the calendar year 1943 had already expired. Accordingly, even if the various consents be "pieced together," it would not be open to the Commissioner to determine deficiencies for either of the 2 calendar years involved.

It may appear to be harsh to the Government to hold that the statute of limitations bars the assessment of the deficiencies here asserted; but the expiration of the period of limitations often works hardships on one party or the other. Whatever harshness that is present here could have been avoided had the Government protected its interests by issuing timely notices of deficiency covering both the calendar years and the fiscal years.

We hold then that the statute of limitations bars the assessment of the deficiencies asserted herein. It therefore is unnecessary to make findings of fact concerning, or enter into a discussion of, other questions presented.

*Decisions will be entered for the petitioner.*