STEWART PERRY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
PERRY v. COMMISSIONER
Docket No. 1850-88
United States Tax Court
T.C. Memo 1990-228; 1990 Tax Ct. Memo LEXIS 262; 59 T.C.M. (CCH) 533; T.C.M. (RIA) 90228; May 9, 1990, Filed *262 Decision will be entered for the respondent. Stewart Perry, pro se. Mary E. (Betsy) Pierce, for the respondent. PAJAK, Special Trial Judge. PAJAK
*760 MEMORANDUM FINDINGS OF FACT AND OPINION This case was heard pursuant to section 7443A(b) and Rule 180 et seq. (All section numbers refer to the Internal Revenue Code in effect for the taxable year in issue, unless otherwise indicated. All rule numbers refer to the Tax Court Rules of Practice and Procedure.) Respondent determined a deficiency in petitioner's 1983 Federal income tax of $ 103 and an addition to tax under section 6651(a) of $ 6,095.58. After concessions by petitioner, the Court must decide (1) whether for 1983 petitioner is required to report on the installment method gain from a sale of real property in 1980 and (2) whether petitioner is liable for the section 6651(a) addition to tax. FINDINGS OF FACT To the extent stipulated, the facts are so found. Petitioner resided in Wayzata, Minnesota when he filed his petition. Petitioner, an attorney licensed to practice in Minnesota, was a sole practitioner in 1983. Petitioner's practice primarily involved personal injury cases. In February 1980, petitioner sold real property *263 located at 1752-54 Sumach Lane in Minneapolis, Minnesota (the Sumach Lane property) for $ 98,900. The buyers paid earnest money and a downpayment of $ 20,000. The balance was payable in monthly installments of at least $ 600 from March 1980 until January 1983, when a balloon payment of the remaining balance was to be made. Petitioner received a total of $ 21,620 in principal payments in 1980 for the Sumach Lane property. On his 1980 Federal income tax return, petitioner elected to report the sale on the installment method. He reported *761 a profit (i.e., total gain to be realized) of $ 35,311 and reported a realized gain for 1980 of $ 7,673. Petitioner continued to report the sale on the installment method on his 1981, 1982, and 1983 Federal income tax returns. In 1983, petitioner received balloon payments from the 1980 installment sale, as well as from an installment sale in 1979. In 1983, petitioner received gross receipts of legal fees double the amounts in his prior two years. Two large legal fees in the approximate amount of $ 112,000 received in the spring of 1983 equalled his 1982 gross receipts. He also had a gain from the sale of a rental property in 1983. By the close *264 of 1983, petitioner knew he would have substantial taxable income. For 1983, petitioner reported gross income of $ 244,396.78 and expenses of $ 103,037.10, resulting in a net profit from his law practice of $ 141,359.68. Petitioner also reported total losses from rental properties of $ 35,531, and a net taxable capital gain of $ 41,810 from the balloon payments received and from the sale of a rental property in 1983. Petitioner owned the following five rental properties throughout 1983: a two-bedroom unit in Colorado, a one-bedroom condominium and a two-bedroom condominium in Hawaii, all of which were managed for petitioner; and a student boarding house and a dwelling unit in Minneapolis, Minnesota which were managed by petitioner or his son, Shawn. In January 1984, petitioner was in contact with his Hawaii property manager with respect to the income tax aspects arising from the Hawaii properties. Petitioner deposited most of the checks received for payment of legal services and wrote most of the checks for payment of the firm's expenses. Shawn also made deposits for petitioner. When either petitioner or Shawn received a check for payment of services, petitioner's business practice *265 was to deposit the checks in the business bank account. The only records of these transactions were the carbon copies of the deposit slips. When writing checks for payment of expenses, the carbon copies were again the only records of payments. Petitioner kept no other ledger of income or expenses. During 1983 and 1984, Shawn was a paralegal in petitioner's office and worked on petitioner's records. During 1983, Shawn maintained a tax file to keep records of all relevant transactions. After the tax year ended, Shawn prepared formal records to give to petitioner's accountant who prepared petitioner's 1983 Federal and State income tax returns. On or about April 14, 1984, petitioner filed a Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return for the year 1983 to extend the time for filing to August 15, 1984. Petitioner provided no estimate of his tax liability on the form and therefore made no payment of an estimated amount. Petitioner enclosed $ 5,000 with the form. The form showed total payments of $ 8,146, which amount included the $ 5,000 remitted with the form. The form was not signed or dated. Shawn delivered the records for *266 1983 to petitioner's accountant in late July 1984. Petitioner's accountant completed petitioner's 1983 Federal income tax return by August 14, 1984, showing $ 18,240 of tax on his taxable income, $ 3,137 as self-employment tax, and $ 13,746 of alternative minimum tax for a total tax of $ 35,123. The return showed the amount of $ 26,977 was due to be paid to the Internal Revenue Service (IRS). On August 15, 1984, petitioner filed a Form 2688, Application for Extension of Time to File U.S. Individual Income Tax Return for his 1983 return. On the form, petitioner stated that previously he had been granted an extension of time for that year. Petitioner also stated that his return was very complicated and that he wanted a Certified Public Accountant (CPA) to review it. A check for $ 5,000 accompanied this request. The IRS approved a two-month extension to October 15, 1984. The CPA who reviewed petitioner's 1983 return made no changes on the Federal return as completed by petitioner's accountant on August 14, 1984. (A $ 6,000 error was found on the State tax return.) The Federal return was signed by petitioner on October 15, 1984, and mailed to the IRS. During the course of the IRS's *267 attempts to collect the unpaid part of the 1983 tax liability, petitioner filed amended returns for 1980, 1981, 1982, and 1983 on April 30, 1985. These amended returns were filed with the Internal Revenue Service Center through a revenue officer in the IRS collection division. On each amended return, petitioner stated that he was revoking his election to report the sale of the Sumach Lane property on the installment method. On the 1981, 1982, and 1983 amended returns, petitioner stated that the revocation was due to unnecessary changes in the alternative minimum tax for 1983. On the 1980 amended return, petitioner stated that "taxpayer elects to treat sale of real estate as non-installment sale," and listed a gain of $ 35,311 less a reported gain of $ 7,673, with the result reduced by 60 percent for a "tax adj." of $ 11,055. For 1980, petitioner showed an additional tax liability of $ 1,251. Due to losses on the original and amended returns, there were no additional amounts shown as owed by or due to petitioner for 1981 and 1982. On the 1983 amended return, petitioner showed a decrease in *762 tax liability of $ 6,451 in the net change column. The 1983 amended return also stated *268 that $ 15,632 was still owed by petitioner. On May 2, 1985, the IRS posted petitioner's payment of $ 1,251 to his 1980 account, apparently prior to any adjustment based on the amended return for that year. Because petitioner's 1980 tax had been fully paid prior to that date, the IRS credited the $ 1,251 payment against petitioner's unpaid tax liabilities for 1983. On June 17, 1985, due to the amended return for 1980, the IRS assessed the $ 1,251 shown as due, plus a computational correction, together with interest and an addition to tax. On October 10, 1985, petitioner paid the assessment for 1980. On his 1983 amended return, petitioner claimed additional business deductions, which respondent partially allowed in the notice of deficiency. Petitioner has conceded additional adjustments made by respondent. Petitioner paid his originally reported 1983 tax liability of $ 35,123 before the notice of deficiency was issued. Accordingly, respondent treated petitioner's 1983 amended return as a claim for refund for overpayment of tax and did not allow petitioner's claimed revocation of the installment method for reporting the gain from the Sumach Lane property for 1983. In his petition, *269 petitioner claimed an overpayment of $ 6,531 in Federal income taxes which amount is the reduction claimed on his 1983 amended return. OPINION We first decide whether for the taxable year 1983 petitioner is required to report the gain from the February 1980 sale of the Sumach Lane property on the installment method. At the time petitioner sold the Sumach Lane property, taxpayers were required by section 453[1] *271 to affirmatively elect to use the installment method of reporting gains from sales of real property and casual sales of personal property. Sec. 453(b); Gibson & ABC, Inc. V. Commissioner, 89 T.C. 1177, 1182-1183 (1987). Section 453 as in effect at the time of the sale is to be applied in this case. (Section 2(a) of the Installment Sales Revision Act of 1980 made extensive changes to section 453. Changes which relate to sales of real property and casual sales of personal property apply to dispositions made after the date of enactment of that act, October 19, 1980, in taxable years ending after that date. Installment Sales Revision Act of 1980, Pub. L. 96-471, sec. 2(a), 6(a), 94 Stat. 2247, 2256. Thus, this case does not involve the election-out provision of the new section 453(e) *270 under which installment reporting would automatically apply to a qualified sale unless the taxpayer elected not to have the provision apply.) Both parties agree that petitioner properly elected the installment method of reporting the gain under section 453 on the sale of the Sumach Lane property on his 1980 return and continued to use that method on his 1981, 1982, and 1983 returns. For taxable years after December 31, 1982, section 55 was amended to provide for a tax equal to the excess of 20 percent of the alternative minimum taxable income which exceeded an exemption amount over the regular tax for the taxable year. Tax Equity and Fiscal Responsibility *272 Act of 1982, Pub. L. 97-248, sec. 201(a), 96 Stat. 324, 411, 421. Petitioner claimed this change impacted too heavily on him on his 1983 return. But in a case concerning the alternative minimum tax, this Court has stated that: "it is well settled that installment payments are subject to taxation under the provisions of the law as are in effect at the time the gain is recognized. Snell v. Commissioner, *763 97 F.2d 891 (5th Cir. 1938). One of the risks a taxpayer takes when he elects installment reporting is that the tax law might change not only as to 'tax rate but in any other of its provisions.' Snell v. Commissioner, supra at 893. " Estate of Kearns v. Commissioner , 73 T.C. 1223, 1225 (1980). Petitioner wanted to reduce his tax liability including his alternative minimum tax for 1983 by reporting the entire gain from the sale of the Sumach Lane property in 1980 rather than reporting the balloon installment payment on his 1983 return. On April 30, 1985, petitioner attempted to revoke his election of the installment method for the 1980 sale of the Sumach Lane property by filing amended returns for 1980, 1981, 1982, and *938 1983. [2] *273 In the absence of exceptional circumstances, a taxpayer who elects a valid method of reporting a sale of realty on other than the installment method may not later revoke that election and elect the installment method under the binding election rule. Pacific National Co. v. Welch, 304 U.S. 191 (1938); Gibson & ABC, Inc. v. Commissioner, supra. An explanation of those exceptional circumstances, none of which apply in this case, is set forth in Gibson & ABC, Inc. v. Commissioner, 89 T.C. at 1185-1187. More specifically, the courts have held that a proper election by a taxpayer to report a sale of real property on the installment method may not be revoked. Such a taxpayer may not later change his position because the election proved to be disadvantageous taxwise. Pomeroy v. Commissioner, 54 T.C. 1716 (1970); Hansel v. Commissioner, T.C. Memo. 1981-472; Youngblood v. United States, 388 F. Supp. 152 (W.D. Tex. 1975), affd. per curiam 507 F.2d 1263 (5th Cir. 1975). *274 The Supreme Court in Pacific National Co. v. Welch, 304 U.S. at 194-195, stated that: Change from one method to the other, as petitioner seeks, would require recomputation and readjustment of tax liability for subsequent years and impose burdensome uncertainties upon the administration of the revenue laws. It would operate to enlarge the statutory period for filing returns * * *. * * * By reporting income from the sales in question according to the deferred payment method, petitioner made an election that is binding upon it and the commissioner. [Fn. ref. omitted.]
This language was relied on in Pomeroy v. Commissioner, supra,Hansel v. Commissioner, supra and Youngblood v. United States, supra.
The installment method is a special method of accounting. Sec. 1.446-1(c)(iii), Income Tax Regs.Section 446(e) requires, except as otherwise expressly provided, that a taxpayer must secure respondent's consent before changing to a new method of accounting. Petitioner argues that respondent impliedly consented to petitioner's revocation of the installment method of accounting for the sale of the Sumach Lane property because respondent accepted the amended returns for 1980-1982 and assessed *275 and collected taxes petitioner reported as due for 1980. Under the facts of this case, we do not agree. Petitioner relies on Tampa Tribune Publishing Co. v. Tomlinson, an unreported case (S.D.Fla. 1957), 57-1 USTC par. 9421, 52 AFTR 1799, which is based on cases such as Fowler Bros. & Cox v. Commissioner, 138 F.2d 774, 775-776 (6th Cir. 1943), affg. 47 B.T.A. 103 (1942) and Linen Thread Co., Ltd. v. Commissioner, 14 T.C. 725, 732 (1950). In Tampa Tribune, a taxpayer changed from the accrual method of reporting taxes to the cash method without the Commissioner's consent. Over fifteen years later, respondent disallowed certain deductions taken on the cash method because respondent had not consented to the change. The court held that respondent had impliedly consented to the change in accounting method because respondent had not objected over a fifteen-year period. In Fowler Bros. & Cox, the court upheld respondent's position that the taxpayer was bound by his change of accounting method even though respondent's permission had not been obtained. In Linen Thread, the change in the taxpayer's books, together with a change in the basis of the returns accepted by respondent, was held *276 tantamount to a request for permission to change and the approval of such change. We find the implied consent cases inapplicable because they did not consider situations where the installment method was properly elected as to real estate and was subject to the binding election rule set forth in Pacific National Co. v. Welch, supra, and Pomeroy v. Commissioner, supra . Because such an election is binding on both parties, one party cannot impliedly consent to a change by the other, at least under the circumstances presented by this case. Petitioner also argued that respondent was estopped from contesting petitioner's revocation *764 of the installment method because respondent's treatment of the taxable years 1980, 1981, 1982, and 1983 was inconsistent. It is well established that the doctrine of estoppel should be applied against respondent with the utmost caution and restraint. Without going into all the necessary elements of equitable estoppel, one of the necessary elements is that the person claiming the benefits of estoppel must reasonably rely on the action of the person against whom estoppel is claimed. Estate of Emerson v. Commissioner, 67 T.C. 612, 617 (1977); Hudock v. Commissioner, 65 T.C. 351, 363 (1975). *277 Petitioner produced no evidence to show that he relied on the action of respondent before petitioner filed the amended returns for the four years. That the amended returns were filed with the IRS Service Center through a revenue officer in the collection division of the IRS is not significant. We do not know the views of that officer nor would they be material since respondent is not bound by the views of his subordinates. Union Equity Cooperative Exchange v. Commissioner, 481 F.2d 812, 817 (10th Cir. 1973), affg. 58 T.C. 397 (1972). As a result of petitioner's own actions, additional taxes for 1980 and an addition were assessed by respondent and paid by petitioner. [3] We have no jurisdiction over the determination of 1980 other than to consider those facts with respect to 1983, the year before us. Sec. 6214(b). To the extent respondent made an error of law for 1980, he is entitled to correct it for 1983. Dixon v. United States, 381 U.S. 68 (1965); Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 183-184 (1957); Easter v. Commissioner, 338 F.2d 968 (4th Cir. 1964), affg. per curiam a Memorandum Opinion of this Court. We do not find that the facts in this case warrant *278 application of the doctrine of equitable estoppel. For the foregoing reasons, petitioner is required to report the sale of the Sumach Lane property on the installment method for the taxable year 1983. We sustain respondent's determination on this issue. We next decide whether petitioner is liable for the section 6651(a) addition to tax. Section 6651(a)(1) provides for an addition to tax for failure to file a Federal income tax return by its due date determined with regard to any extension of time for filing previously granted. Calendar year individual taxpayers must file their Federal income tax return by April 15 following the close of the calendar year. Sec. 6072(a). Respondent may grant a reasonable extension of time for filing a return, not to exceed six months. Sec. 6081(a). For taxable years ending on or after December 31, 1982, section 1.6081-4, Income Tax Regs., provides that an automatic four-month extension is granted if the taxpayer files a Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, with the IRS by the *279 due date for filing the taxpayer's return and only if the other requirements set forth in the regulations are met. The application must be signed, must show the full amount properly estimated as the tax liability for that tax year, and must include a full remittance of any unpaid amount of the estimate. Sec. 1.6081-4(a), Income Tax Regs.; Crocker v. Commissioner, 92 T.C. 899, 905 (1989). As this Court stated in Crocker v. Commissioner, 92 T.C. at 911-912:
The provision for automatic extensions was not, in our view, intended to encourage a "lax attitude" toward filing dates, and should not be available to a taxpayer who does not comply with the conditions placed on obtaining such extensions. We hold that respondent may properly void automatic extensions of filing deadlines previously obtained where the taxpayer's Form 4868 is invalid because of a failure to properly estimate tax liability. To hold otherwise would force respondent to conduct a detailed examination of every extension request prior to automatic approval of that request. Such a requirement is not realistic.
The District Director or the Director of the Service Center may, in his discretion, terminate an automatic extension *280 by mailing a notice of termination to the taxpayer at least ten days prior to the termination date. Sec. 1.6081-4(c), Income Tax Regs. That petitioner's application was not terminated prior to the date on which he filed his 1983 return does not prevent respondent from voiding his automatic extension if petitioner fails to properly estimate tax liability on his Form 4868. Crocker v. Commissioner, supra.
Section 1.6081-4(a)(5), Income Tax Regs., provides that except in the case of undue hardship, no extension of time within which to file an individual return may be granted under section *765 1.6081-1, Income Tax Regs., until an automatic extension has been granted. An individual taxpayer may seek an additional extension of time within which to file a return by setting forth an explanation of the full reasons for the extension on a signed Form 2688 or in a letter. Sec. 1.6081-1(b), Income Tax Regs. The Form 2688 is titled "Application for Extension of Time to File Individual Income Tax Return." Petitioner filed a Form 4868 application for an automatic extension, which was unsigned and which failed to provide an estimate of his 1983 tax. A check for $ 5,000 was sent with the Form 4868 *281 on or about April 14, 1984. The form showed total payments of $ 8,146 for 1983. Petitioner claimed he was not able to correctly estimate his tax liability. But no such exactitude in the estimation is required. Crocker v. Commissioner, 92 T.C. at 907. A taxpayer must make a bona fide and reasonable estimate of the tax liability based on the information available when a request for extension is made. Berlin v. Commissioner, 59 F.2d 996 (2d Cir. 1932), affg. a Memorandum Opinion of this Court. Petitioner argued that this case should be controlled by Hudspeth v. Commissioner, T.C. Memo. 1985-628. There, taxpayers provided estimates of taxes that were substantially less than the actual tax liability later determined. This Court held that the taxpayers provided proper estimates based on the information available to them at the time they requested extensions of time to file. Hudspeth v. Commissioner, supra.Petitioner could have provided an estimate of his tax liability based on the information available to him at the time he requested an extension of time. Petitioner failed to try to estimate his tax liability and for this reason alone his Form 4868 request for extension of time is *282 invalid. Petitioner also mailed a signed Form 2688 application for extension to the IRS on August 15, 1984, and the IRS approved a second extension to October 15, 1984. Petitioner argued that respondent waived any objection to his request for an automatic extension because respondent granted the second extension. In Crocker v. Commissioner, supra, for one of the taxable years at issue, the taxpayers obtained an automatic extension and thereafter respondent granted them a second extension. Even though a second extension had been granted, this Court in Crocker held that respondent properly voided the previously obtained automatic extension and sustained respondent's position that the return for that year was due on April 15. We follow Crocker. Because petitioner's application for automatic extension was invalid and because petitioner provided no evidence of an undue hardship, petitioner was not entitled to the second extension. If respondent voids an automatic extension for failure to properly estimate a tax liability, the taxpayer is liable for an addition to tax under section 6651(a)(1) unless the taxpayer establishes that the failure to file a return by the due date (determined *283 without regard to the voided extension) was due to reasonable cause and not willful neglect. Sec. 301.6651-1(a)(1), Proced. & Admin. Regs.; Crocker v. Commissioner, 92 T.C. at 912. A failure to file is due to reasonable cause if the taxpayer exercised ordinary business care and prudence but was unable to file his return by the due date. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; Crocker v. Commissioner, 92 T.C. at 913. Petitioner knew his 1983 tax return was due by April 15, 1984. Petitioner claimed he was waiting for tax information on his rental properties in Hawaii and Colorado. He was in contact with the Hawaiian caretaker in January 1984 concerning his income tax picture. Petitioner furnished no reason why he could not get the requisite information. In any case, the unavailability of information does not constitute reasonable cause. Crocker v. Commissioner, 92 T.C. at 913. In addition, reliance on a voided automatic extension does not constitute reasonable cause for a taxpayer's failure to file a timely return where the taxpayer failed to properly estimate the tax liability in obtaining such extension. Crocker v. Commissioner, 92 T.C. at 913. Since petitioner has not *284 shown that his failure to file his 1983 tax return by April 15, 1984 was due to reasonable cause, petitioner is liable for the addition to tax under section 6651(a). Decision will be entered for the respondent.
Footnotes
1. Section 453 provides, in pertinent part, as follows: SEC. 453. INSTALLMENT METHOD.
(a) DEALERS IN PERSONAL PROPERTY. -- (1) IN GENERAL. -- Under regulations prescribed by the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price.
* * * (b) SALES OF REALTY AND CASUAL SALES OF PERSONALTY. -- (1) GENERAL RULE. -- Income from -- (A) a sale or other disposition of real property, or (B) a casual sale or other casual disposition of personal property (other than property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year) for a price exceeding $ 1,000,
may (under regulations prescribed by the Secretary) be returned on the basis and in the manner prescribed in subsection (a). * * * (c) CHANGE FROM ACCRUAL TO INSTALLMENT BASIS. -- (1) GENERAL RULE. -- If a taxpayer entitled to the benefits of subsection (a) elects for any taxable year to report his taxable income on the installment basis, then in computing his taxable income for such year (referred to in this subsection as "year of change") or for any subsequent year -- * * * * * *
(4) REVOCATION OF ELECTION. -- An election under paragraph (1) to report taxable income on the installment basis may be revoked by filing a notice of revocation, in such manner as the Secretary prescribes by regulations, at any time before the expiration of 3 years following the date of the filing of the tax return for the year of change. * * *↩
2. Petitioner concedes that he is not covered by the specific statutory exception in Section 453(c)(4) which allows dealers in personal property to revoke the election to report on the installment basis before 3 years after the filing of the tax return for the year of change. Sec. 1.453-8(d), Income Tax Regs.↩
3. Petitioner may be able to obtain relief under the mitigation of limitations provisions of sections 1311-1314.↩