Alvin Pollack, et al. [1] v. Commissioner. Pollack v. Commissioner
Docket Nos. 78640 - 78651, 78656.
United States Tax Court
T.C. Memo 1964-63; 1964 Tax Ct. Memo LEXIS 275; 23 T.C.M. (CCH) 433; T.C.M. (RIA) 64063; March 12, 1964
*275 Pollack sold used cars under a trade name. He acquired one corporation and organized two more which at various times conducted the business, keeping books and filing corporation tax returns of income from used car sales, while he, as president of each, returned salary income only. The corporations' records omitted some sales and on others understated income or overstated expense. Other commission income was omitted. Pollack and one corporation transferred assets to members of his family to evade or hinder collection of their tax liabilities. Held: (1) The corporations were engaged in business and the omitted income is taxable to them; (2) Such income is taxable to Pollack as dividends or capital distributions from the corporations; (3) The deficiencies in tax of Pollack and the corporations are due to fraud with intent to evade tax; (4) The statute of limitations does not bar the assessment and collection of the deficiencies; (5) Pollack is liable as transferee of assets of the corporations for the deficiencies determined against them; (6) Pollack's wife and daughter are liable as transferees of assets for deficiencies of Pollack and of one of the corporations to the *276 extent determined from the evidence. Harry Friedman and Bernard R. Fleisher, for the petitioners. Charles M. Greenspan and Frederic S. Kramer, for the respondent. BRUCE Memorandum Findings of Fact and Opinion
*277 BRUCE, Judge: In these consolidated cases the respondent determined the following deficiencies in income tax and additions to tax of the taxpayers named: Docket No. 78640 - Alvin Pollack
Additions to Tax,
I.R.C. 1939
Sec.
Sec. 294
Sec. 294
Year
Deficiency
293(b)
(d)(1)(A)
(d)(2)
1947
$22,916.06
$11,458.03
$2,335.28
$1,401.16
1948
44,140.91
22,070.46
4,414.08
2,648.45
1949
58,759.62
29,379.81
5,875.96
3,525.58
1950
74,202.51
37,101.26
7,390.76
4,434.46
Docket No. 78641 - Lorney Trading Corporation
Period
Deficiency
Sec. 293(b)
10/18/48 to 9/30/49
$ 7,683.04
$ 3,841.52
Years Ended
9/30/50
32,129.39
17,076.26
9/30/51
7,694.47
3,847.24
Docket No. 78642 - Manning's Brake & Auto
Service Corporation
Sec.
Sec.
Period
Deficiency
291(a)
293(b)
6/13/49 to
5/31/50
$54,547.30
$11,666.26
$29,165.65
Docket No. 78643 - Warney Trading Corporation
Year Ended
Deficiency
Sec. 293(b)
4/30/48
$49,353.90
$24,676.95
4/30/49
18,780.97
9,390.49
4/30/50
190.28
95.14
The respondent further determined that Alvin Pollack *278 was liable as transferee of the assets of each of the foregoing corporations to the extent of the amount of the deficiencies determined against each of them, in Docket No. 78644 as transferee of Warney Trading Corporation, in Docket No. 78645 as transferee of Manning's Brake & Auto Service Corporation, and in Docket No. 78646 as transfere of Lorney Trading Corporation. The respondent further determined in Docket No. 78647 that N.R.G. Realty Corporation was liable to the extent of $70,000 as transferee of Alvin Pollack, transferee of Lorney Trading Corporation, on account of the deficiencies of the latter corporation. The respondent further determined that Natalie Pomerantz, in Docket No. 78648, and Evelyn Pollack, in Docket No. 78649, were each liable to the extent of $60,000 as transferee of the assets of N.R.G. Realty Corporation, transferee of Alvin Pollack, Transferee of Lorney Trading Corporation on account of the deficiencies in tax of the latter corporation. The respondent further determined that Natalie Pomerantz, Evelyn Pollack, and Roberta Chaleff were each liable as transferees of assets of Alvin Pollack for the deficiencies determined against him to the extent stated *279 below: Extent of
Docket No.
Transferee
Liability
78650
Natalie
$ 82,200
78651
Evelyn
173,858
78656
Roberta
30,000
Some facts are stipulated. The issues are as follows: (1) Whether certain income received in the years 1947 to 1950 was taxable to Warney Trading Corporation, Lorney Trading Corporation, and Manning's Brake & Auto Service Corporation; (2) Whether such income was also taxable to Alvin Pollack as distributions from such corporations; (3) Whether certain deductions claimed by Pollack and the corporations have been substantiated; (4) Whether the respondent has proved fraud on the part of Pollack and the corporations; (5) Whether any of the deficiencies determined are barred by the statutory period of limitations; and (6) Whether the liability of any of the several transferees for deficiencies determined against the transferors has been proved. The respondent concedes error in the additions to tax under section 294(d)(2), I.R.C. of 1939. Findings of Fact The stipulated facts are found accordingly, and the stipulation and exhibits attached thereto are incorporated herein by this reference. Alvin Pollack, also known as *280 Alvin J. Pollack, resided during the years 1947-1950, inclusive, in Forest Hills, New York. Evelyn Pollack is the wife of Alvin Pollack. Natalie Pomerantz and Roberta Chaleff and daughters of Alvin and Evelyn Pollack. Alvin Pollack, hereinafter sometimes referred to as Pollack, filed individual income tax returns for the years 1947 through 1950 with the collector of internal revenue at Brooklyn, New York. Warney Trading Corporation, hereinafter referred to as Warney, was a corporation oganized under the laws of New York in 1940 as Warney Realty Corporation. Its name was changed to Warney Trading Corporation on February 11, 1948. It was dissolved in 1961. It filed corporate income tax returns for fiscal years ended April 30, in 1948, 1949, and 1950. Lorney Trading Corporation, hereinafter referred to as Lorney, was a corporation organized unde the laws of New York in September 1948. Manning's Brake & Auto Service Corporation, hereinafter referred to as Manning's Brake, was a corporation organized under the laws of New York in June 1949. Warney, Lorney, and Manning's Brake filed corporation income tax returns with the collector of internal revenue for the 3rd New York District. *281 All such tax returns were signed by Alvin Pollack, as president. On January 28, 1946, Pollack filed a certificate that he was transacting business under the name and style of Manning Tire & Battery Service at 101 W. 108th Street, in New York City. During the months of January through April 1947, Pollack carried on in New York City a business of dealing in used automobiles under the name Manning's Tire & Battery Service, hereinafter sometimes referred to as MT&BS. On his tax return for 1947 he reported income from this business which resulted from sales made in 1947 prior to May 1. He did not report any income from used car sales, rents, or commissions with respect to sales made after April 30, 1947, through December 31, 1950, on his individual returns for 1947 through 1950, but reported as his sole income in such period salaries from Warney, Lorney, and Manning's Brake. Some income received between May 1, 1947, and December 31, 1950, from sales of used cars and from commissions and rebates was reported on the corporation income tax returns of Warney, Lorney, or Manning's Brake. Each of these corporations kept books and records which showed income from such sales. Pollack maintained *282 no books or records during this period in his own name or in the name of MT&BS. The corporations' records were not adequate to show all the income derived. Some sales were omitted and were unreported on the returns of any of these corporations or of Pollack, individually. Some sales were recorded on the books of one or another of the corporations but were not correctly recorded, the amount of cash received being understated or the expense overstated, or both. Where sales were omitted, the corresponding purchases were usually recorded and included in the cost of goods sold. The records were incomplete, and, on investigation, the bank accounts could not be reconciled with the books and the deposits could not be identified with the receipts shown in the journal. On some exchanges, part of the receipts were not entered. Between May 1, 1947, and October 17, 1948, all the used car business income reported was reported by Warney. After October 17, 1948, Warney reported only miscellaneous finance company income. From October 18, 1948, until June 12, 1949, the only reported income from used car sales, rebates, or commissions was reported by Lorney. From June 13, 1949, until March 31, 1950, the *283 only reported income from used car sales, rebates, or commissions was reported by Manning's Brake. From April 1, 1950, to December 31, 1950, the only used car income, rebates, or commissions recorded on the books or shown on the returns of any of these corporations was on Lorney's books and returns. After 1950 Pollack carried on business individually as MT&BS, and no used car sales income was reported by any of these corporations. The books of Warney showed an opening inventory of cars, capital stock, and a loan from Pollack. The inventory held by Pollack as of May 1, 1947, was transferred to Warney as its opening inventory. When Lorney began business, in October 1948, Warney's inventory, then $22,500, was transferred to Lorney as its opening inventory. When Manning's Brake began business in June 1949, the books showed the transfer of inventory to it. In April 1950 Lorney resumed business, and the inventory was transferred to it from Manning's Brake. The books sometimes showed accounts owing from one of these corporations to another and showed loans from Pollack to the corporations. Pollack was the principal and dominating stockholder of these three corporations, made the sole *284 capital contributions, signed all checks, and had the only authority to deal. All sales memoranda carried the name Manning's Tire & Battery Service. Checks received on sales were made out to that name. Pollack frequently cashed such checks and kept the money, sometimes depositing amounts to the account of one of the corporations and sometimes retaining the money. Warney had a checking account from March 11, 1948, until after 1950. Manning's Brake had a checking account from December 7, 1949, until after 1950. Their checks were printed with the corporation's name. Warney's checks also showed the name of Manning's Tire & Battery Service. Lorney used Warney's checking account, and Maning's Brake used Warney's checking account until December 1949. Practically all the used car sales were financed. In 1947 and 1948 most of the financing was done through Tilden Commerical Alliance, Inc., hereinafter referred to as TCA. This company paid rebates to dealers and paid rebates on this business, the checks being made to MT&BS, and the account was carried in that name on the books of TCA. These rebates were not all reported as income by Warney, Lorney, or Manning's Brake. Their books showed *285 the receipt of such checks as cash receipts but did not show as income the commission income which was part of those checks. TCA paid to MT&BS the following amounts of commission income which were not reported as income by Pollack or by any of the corporations: May 1, 1947, to December 31, 1947
$13,596.71
January 1, 1948, to April 30, 1948
319.51
May 1, 1948, to April 30, 1949
72.75
January 1, 1949, to June 12, 1949
390.00
June 13, 1949, to December 31, 1949
339.45
April 1, 1950, to September 30, 1950
621.81
October 1, 1950, to December 31, 1950
25.50
The foregoing commissions were income earned by the corporations: By Warney in the amounts of $13,596.71, $319.51 adn $72.75, by Lorney in the amounts of $390, $621.81, and $25.50, and by Manning's Brake in the amount of $339.45. Sales of used cars made under the trade name of MT&BS in the amounts and for the periods as follows were not reported for tax purposes by Pollack or any of the corporations involved: May 1, 1947, to December 31, 1947
$ 3,115.80
January 1, 1948, to April 30, 1948
25,382.93
May 1, 1948, to April 30, 1949
24,925.00
October 18, 1948, to December 31, 1948
1,970.00
January 1, 1949, to June 12, 1949
12,086.67
June 13, 1949, to December 31, 1949
46,881.84
January 1, 1950, to March 30, 1950
7,260.00
April 1, 1950, to September 30, 1950
25,895.67
October 1, 1950, to December 31, 1950
8,745.01
*286 These sales were made by Warney in the amount of $28,498.73 in its fiscal year ended in 1948 and $24,925 in the next fiscal year but during 1948; by Lorney in its fiscal period ended September 30, 1949, in the amounts of $1,970 in 1948 and $12,086.67 in 1949, in its fiscal year ended in 1950 in the amount of $25,895.67, all in 1950, and in its fiscal year ended in 1951 in the amount of $8,745.01, all made during 1950; and by Manning's Brake in the amounts of $46,881.84 during 1949 and $7,260 during 1950. In the years involved the State of New York Bureau of Motor Vehicles prescribed form MV-50 for reporting sales of used motor vehicles. This document was in triplicate, was serially numbered, and identified the dealer, purchaser, and former owner, as well as describing the vehicle transferred. The forms MV-50 used in connection with the sales here involved showed Manning's Tire & Battery Service as the dealer. The forms retained by Pollack or the corporations were not complete in that many serial numbers were missing. At various times the corporations financed sales through other financing companies. Among these were Jefferson Discount Corporation, Lincoln Discount Corporation, *287 Gotham Credit Corporation, and Phoenix Commercial Corporation. The books of Warney understated cash receipts in an amount equal to the sum of the understatement of commission income from TCA plus a fictitious expense for alleged finance charges. On the sales of used cars during the period May 1, 1947, to December 31, 1947, the amount of such fictitious finance charges was $26,618.79. This amount was deducted on Warney's return for the year ended April 30, 1948, although the finance charges were not incurred by Warney but by the purchasers. The book entries were false and were made so that the books would appear to be in balance. These receipts came in to the possession of Pollack and were retained by him. During the period May 1, 1947, to September 29, 1948, Samuel and Herbert Landerson and Harold Pollack and one or two other persons made various sales of used cars under the name and license of MT&BS. For the permission to do so they paid a commission of $25 per car. These commissions were retained by Pollack. During the period May 1, 1947, to April 30, 1948, these commissions amounted to $725. In the period May 1 to September 29, 1948, they amounted to $2,575. They were not reported *288 as income by Pollack or by Warney. They constituted income to Warney. In Pollack's income tax returns for 1947 through 1950 he claimed exemptions for Evelyn, Natalie, and Roberta, and a son, Gary. On the 1947 return he reported income from his business as MT&BS, showing gross sales $95,986.07, starting inventory $6,500, ending inventory $8,000, and net profit of $3,915.43; and salary income of $3,700, less expenses of $400, from Warney as his employer. Tax liability of $436.67 was shown. He stated his occupation as auto salesman. On the 1948 return he reported salary income from Warney and Lorney as his employers and stated his occupation as auto dealer. Total income reported was $4,700 with no tax due. On this 1949 and 1950 returns he reported salary income from Lorney and Manning's Brake as his employers and gave his occupation as sales manager. On the 1950 return one employer was listed as "Lorney Trading Corp. DB Mannings Used Cars." Total income of $5,000 with no tax due was reproted for 1949. For 1950 total income of $5,200 was reported with no tax due and a refund of tax withheld was claimed. The returns omitted to report certain dividends which were received by Evelyn Pollack *289 from TCA. Deductions were claimed for medical expenses and contributions. These claims were not substantiated. Warney's return for the fiscal year ended April 30, 1948, stated its business as trading in sccoundhand cars, gave the address at 12 Moylan Place, New York City, showed that it had two stockholders, Alvin and Evelyn Pollack, claimed as loss carryover for the preceding year of $286.10, and showed an inventory of $8,000 as of the beginning and of $9,250 as of the end of the year. Warney's return for the fiscal year ended in 1949 stated its business as trading in used cars during the first part of the year and financing used cars during the balance of the year. It showed an inventory of $9,250 at the beginning of the year and indicated that the ending inventory of $22,500 was transferred to Lorney. The return for the fiscal year ended in 1950 stated its business as financing used cars and reported interest income of $4,316.65 and no other income. The balance sheet showed a liability to Lorney. No inventory was shown. The address was 515 West 125th Street. In January 1950 Lorney filed a tentative return and on March 15, 1950, a complete return reporting income for a period *290 stated as a fiscal year beginning October 18, 1948, and ending October 17, 1949. These returns stated the business as used car dealer. The complete return showed profit from sales and also income from commissions; an opening inventory of $22,500; that Pollack, its president, devoted his full time to the business; and that the address was 515 West 125th Street, New York City. In January 1951 Lorney filed a tentative return and on March 15, 1951, filed a complete return for a period stated as a fiscal year beginning October 18, 1949, and ending September 30, 1950. It filed an amended return in February 1952 for this period. The returns filed in 1951 gave the name as "Lorney Trading Corp. DB Manning's Used Cars." Income was reported from sales, rents, and finance company commissions. The last item was increased on the amended return. Lorney filed a tentative return on January 15, 1952, and a complete return on March 17, 1952, for a fiscal year October 1, 1950, to September 30, 1951, stating its business as retail sale of used cars. Income was reported from sales, rents, and finance company commissions. Manning's Brake filed a tentative corporation income tax return in September *291 1950 on a Form 1120 for 1949. On November 17, 1950, it filed a return indicating the period covered as a fiscal year beginning June 13, 1949, and ending June 12, 1950. It filed an amended return for the same period in November 1951. The returns showed the address as 515 West 125th Street, New York City, and the business as "Used Car Dealer and Auto Repair," and reported income from sales and other income from "other sales." They showed an inventory at the end of the year but no opening inventory. Manning's Brake in subsequent periods used a fiscal year ending May 31. The returns of the corporations showed the following amounts of income and tax liability: Warney
Period
Net Income
Tax
5/ 1/47- 4/30/48
$ 414.43
$ 87.03
5/ 1/48- 4/30/49
624.56
131.15
5/ 1/49- 4/30/50
1,337.63
280.90
Lorney
10/18/48-10/17/49
2,276.34
478.03
10/18/49- 9/30/50
13,171.40
3,024.41
10/18/49- 9/30/50 *
21,671.40
5,047.54
10/ 1/50- 9/30/51
51,239.57
21,971.74
Manning's Brake
6/13/49- 6/12/50
3,651.78
766.87
6/13/49- 6/12/50 *
20,203.46
4,550.86
Pollack signed consents (Form 872) individually and as president of each corporation *292 extending the period of limitations upon assessment of taxes as to his taxable years 1948, 1949, and 1950, and for Warney for its fiscal years ended in 1948, 1949, and 1950, for Lorney for the taxable period October 18, 1948, to October 17, 1949, the taxable years ended September 30, 1950 and 1951, and for Manning's Brake for the taxable period June 13, 1949, to June 12, 1950. Similar consents were later signed extending the period of limitations to June 30, 1959. These consents were agreed to by authorized representatives of the respondent. The deficiency letters were mailed November 6, 1958, in all the proceedings. Pollack received transfers of cash from Warney, Lorney, and Manning's Brake as follows: Manning's
Warney
Lorney
Brake
1947
$ 3,256.60
1948
133,163.83
$ 1,970.00
1949
12,476.67
$84,014.96
1950
28,860.65
35,287.99
20,616.00
The foregoing transfers from the corporations to Pollack were in each case made without consideration, were made while the corporation was indebted, were made pursuant to a scheme to defraud creditors, and rendered the transferor insolvent. The liabilities of each of the corporations at the end of each *293 taxable period or year, including Federal income taxes on its earnings, exceeded its assets. On March 11, 1949, Lorney purchased for $45,000 certain real property located at 515 West 125th Street, New York, New York, and gave a purchase money mortgage for $25,000 on the property. Lorney transferred this property by deed dated October 31, 1949, to Evelyn Pollack for a recited consideration of $100. Lorney's books showed no consideration for such transfer. In its tax return for the year ended September 30, 1950, Lorney claimed a deduction of $1,800 for depreciation on a brick building acquired in June 1949 at a cost of $36,000 and having an estimated life of 20 years. On June 21, 1956, Evelyn Pollack by deed transferred the West 125th Street property to N.R.G. Realty Corp., hereinafter sometimes referred to as NRG, for a stated consideration of "ten dollars and other valuable consideration." No consideration was received by Evelyn or Alvin Pollack for this transfer. NRG gave a mortgage on this property on October 2, 1956, to secure the payment of a loan of $100,000. NRG transferred the property by deed dated September 10, 1957, to a purchaser who gave two checks in the amounts of $60,000 *294 and $2,164.04. The larger check was deposited to the account of NRG. The officers of NRG authorized to sign checks were Evelyn Pollack and Natalie Pomerantz. Of the $60,000 deposited, $30,000 was paid to Evelyn and $25,000 to Natalie. No consideration was given for these transfers. After such transfers NRG was insolvent. Evelyn held title to this property solely as Alvin's agent or nominee. Pollack purchased certain property in 1951 located at 65-40 110th Street, Forest Hills, Queens, New York, taking title in the names of Alvin and Evelyn. In July 1956 he transferred this property without consideration to Evelyn alone. As of that time the fair market value of such property was $30,000. Prior to December 12, 1956, Evelyn Pollack owned individually 110 shares of preferred stock and Alvin owned 110 shares individually, and, as co-owner with Evelyn, owned 250 shares of preferred stock and $24,500 in capital notes of Tilden Commercial Alliance. Also, he owned as co-owner with Evelyn or with his son or Natalie or Roberta 230 shares of preferred stock in Guardian Loan Company, Inc. These holdings were transferred to Natalie Pollack on December 12, 1956, without consideration. On January 2, 1958, Natalie *295 Pollack sold her holdings back to these companies and received checks in the total amount of $52,200. Of this amount $51,100 was property of Alvin Pollack transferred without consideration to Natalie Pollack, now Natalie Pomerantz. Alvin Pollack purchased in 1952 single premium installment annuities from Travelers Insurance Company, Hartford, Connecticut, as follows: Date
Amount
Annuity No.
Purchased
Paid
2572689
April 4
$ 66,906.40
2584419
July 15
33,534.00
2592378
September 23
33,417.60
Total
$133,858.00
The annuities were payable monthly to Alvin Pollack. Evelyn Pollack was named as beneficiary. Alvin retained the right to change the beneficiary. Pollack's income tax return for 1947 was false and fraudulent with intent to evade tax. At least a part of each deficiency in tax determined against Pollack for the years 1947 through 1950 was due to fraud with intent to evade tax. At least a part of each deficiency in tax determined against Warney, Lorney, or Manning's Brake was due to fraud with intent to evade tax. Evelyn Pollack was a transferee without consideration of assets of Alvin Pollack to the extent of $30,000. Natalie Pomerantz *296 was a transferee without consideration of assets of Alvin Pollack to the extent of $51,100. N.R.G. Realty Corporation was a transferee without consideration of Alvin Pollack, transferee of assets of Lorney, to the extent of $70,000. Evelyn Pollack was a transferee without consideration of NRG, transferee of Alvin Pollack, transferee of assets of Lorney, to the extent of $30,000. Natalie Pomerantz was a transferee without consideration of NRG, transferee of Alvin Pollack, transferee of assets of Lorney, to the extent of $25,000. Opinion The issues involved in these proceedings arise from a business of dealing in used cars conducted by Alvin Pollack, individually and through three corporations of which he was president and controlling stockholder in the years 1947 through 1950. At the beginning of this period he was operating this business as a sole proprietor under the trade name of Manning's Tire & Battery Service. In his individual income tax return for 1947 he reported income from this business and salary from Warney. The business income was derived from sales made prior to May 1 of that year. In his returns for 1948, 1949, and 1950 he reported no income except salaries *297 from the corporations here involved. Returns filed by these corporations reported income from used car sales made during the period May 1, 1947, to December 31, 1950. The respondent's investigation revealed that a number of sales were not shown on the books of any of the corporations, that other sales were recorded on such books in such a way as to understate income or overstate the expenses, or both, and that some of the commissions and rebates arising from the business and which were received and retained by Pollack were not reported or recorded at all. The respondent determined that the unreported sales were made by one or another of the corporations, that the other unreported commissions and rebates were income of such corporations, that certain unsubstantiated deductions claimed on the corporations' returns were not allowable, and that certain other adjustments were in order, and determined deficiencies in the income of the corporations. The respondent also determined that unreported or concealed income, all of which had come into Pollack's possession, represented distributions to him from the corporations in the form of dividends or capital gains. The respondent's determinations *298 are presumptively correct, and the burden is upon the petitioners to show that they are erroneous. Pollack did not testify. The only witness called by the petitioners in connection with the business of Pollack or the corporations was the revenue agent who investigated the case. The petitioners contend that the respondent attributes to the three corporations a business which was owned and the income of which was earned by Pollack trading under the name Manning Tire & Battery Service. The argument is that all business was done under the trade name; all cars were bought, registered, and sold under the trade name and no used car was ever titled in one of the corporations; all checks received were payable under the trade name and Pollack received them; finance companies' accounts were carried under the trade name; all commissions for financing were paid in that name; and every MV-50 form bore the trade name as the dealer. It is contended that since Pollack owned the cars and received the moneys, he is the person who had command over the income and is taxable thereon, and that the corporations "had no realty except for his tax avoidance purposes." It is said that the books and tax returns *299 must give way to the real facts; that the corporations never did any business and had no real substance; that the income did not belong to the corporations but to Pollack; that the only activity of the corporations was to avoid taxation to Pollack on the income earned by him and escaping taxation is not business; and that the corporations were nothing but Pollack's instruments for his own tax purposes. It is also said that no stock was issued to Pollack by any of these corporations. The corporations' tax returns, some of which show that a certified public accountant prepared them, contain statements that they are in the used car business, show inventories, purchases and sales and payment of salaries and wages, employment taxes, franchise taxes, unemployment insurance, sales taxes, legal and accounting expense, and sometimes real estate taxes. They paid income taxes. One of Lorney's returns showed that the corporation was doing business as Manning's Used Cars. Lorney took title to certain real property and later transferred title to Evelyn. Books were maintained in the names of the corporations showing purchases and sales of cars and expenses of the business. For the corresponding *300 periods there were no books maintained in Pollack's name or in his trade name showing any income from used car sales, rebates or commissions. There was no evidence to the effect that Pollack was engaged during the period May 1, 1947, to December 31, 1950, in the used car business individually or that he had any occupation except that of serving as an officer of these corporations for which they paid him salaries. He reported such salaries on his own returns as his only income. It was admitted in the pleadings that petitioner Alvin Pollack was the principal officer and stockholder of Lorney, Warney, and Manning's Brake. Title to the cars was held in the trade name, and the trade name was used by the corporations. If he held title it was held as agent for the corporations. Had there been other and unrelated stockholders, he could have been required to transfer title at the corporations' instance. For all practical purposes the corporations owned the cars shown on their inventories. Pollack's contention is untenable. He says, in effect, that a taxpayer who has organized or acquired several corporations which have filed corporation tax returns over his signature reporting income and *301 business expenses, and which have maintained books and records of such business, may now, some 12 to 15 years after such filing, assert for the first time that such corporations were not actually doing business, were shams, and were not in receipt of the income so reported or of any other income discovered by the respondent to have been received by them. The argument directly contradicts the returns which Pollack signed and declared under penalties of perjury to be true, correct, and made in good faith. In National Carbide Corp. v. Commissioner, 336 U.S. 422 (1949), the Court held that income earned by subsidiary corporations and turned over to the parent per contract was taxable to the controlled corporations, stating, inter alia (pp. 431-432): when a corporation carries on business activity the fact that the owner retains direction of its affairs down to the minutest detail, provides all of its assets and takes all of its profits can make no difference tax-wise. Pollack has never testified that the returns were untrue or that the corporations were not engaged in business. He has at no time filed amended returns conforming to the position now taken. The argument *302 is preposterous, and we reject it. The petitioners contend that there was no Warney Trading Corporation until 1948 and that the return filed for the fiscal year May 1, 1947, to April 30, 1948, was obviously an erroneous act. They say that Pollock acquired the corporation as Warney Realty Corporation and then changed its name on February 11, 1948, hence it could not have done business in 1947. It is stipulated that this corporation was organized in 1940 and that its name was changed on February 11, 1948. There is no evidence as to when Pollack acquired control of it. It was in existence in 1947, and there is nothing to show it could not have been engaged in this business in 1947. Books were maintained in its name showing transactions during 1947. Pollack caused the corporation to file a return for the entire fiscal year, and there is no affirmative evidence to show that it was not actually engaged in business for the entire year. On the return a loss carryover from the preceding year was claimed, indicating that it had been continuously in business. The revenue agent who investigated the business of Pollack and the corporations found over 300 sales made under the trade name in *303 the taxable periods which were not reported on Pollack's returns, or any of the corporation returns. It is by no means certain that he had located all the unreported sales. A check of the county records of mortgages was impractical, as these were not indexed according to dealers. A list of those unreported sales discovered was furnished the petitioners who said that 88 of these were reported. A recheck by the revenue agent disclosed that 45 of these were reported, the others being not clearly identified. This is mentioned as showing the difficulty of ascertaining true income in the face of the inadequate and false records maintained. The petitioners allege that the respondent has included sales which were made by other persons who paid a fee of $25 per car for the privilege of making their sales under Pollack's license as a dealer, referred to as the Landerson sales. They argue that the deficiencies as determined against the corporations include the income attributable to 45 sales concededly reported and 189 sales by the Landersons and others, hence the deficiencies are patently erroneous and the presumption of correctness is destroyed by its inherent defect, citing Helvering v. Taylor, 293 U.S. 507 (1935), *304 and Welch v. Commissioner, 297 F. 2d 309 (C.A. 4, 1961). The petitioners are mistaken as to the facts. The respondent, in determining the deficiencies against Warney, eliminated sales on 29 cars sold prior to April 30, 1948, and on 189 cars sold later in 1948, prior to October, by other persons who paid for the privilege of selling under the name of MT&BS. Further investigation revealed that these parties made only 103 sales, not 189, in the later period. Thus, the respondent eliminated 86 sales which should have been included in Warney's income. Considering the inadequacies of the petitioners' records, there may have been other sales which Pollack has omitted to report and which the respondent has not discovered. The petitioners have not proved error in the respondent's determination. The respondent made a number of adjustments in the income of the corporations aside from those involving unreported sales, rebates, and commissions and the fictitious expense or finance charges. These included disallowance of provisions or reserves for losses, deductions claimed for equipment purchased, and various expenses which were not substantiated. Warney claimed a net operating *305 loss carryover from prior years which was disallowed. The petitioners have presented no evidence tending to show error in these adjustments. In our view the petitioner corporations have not borne their burden of overcoming the presumption of correctness of the deficiencies determined against them, and we sustain those determinations. The proceeds of the unreported sales, rebates and commissions were retained by Pollack. The respondent determined that they represented distributions to him by the corporations, some in the form of dividends and some as capital gains. This determination is presumptively correct. The respondent disallowed certain deductions claimed on Pollack's returns and Pollack has not substantiated the deductions claimed. The respondent included as income to Pollack certain dividends paid by TCA to Evelyn Pollack. Pollack claimed an exemption for Evelyn on his returns. The exemption is allowable to Pollack on his separate return only if his spouse has no gross income. (Sec. 25(b)(1)(A), I.R.C. 1939.) The respondent was correct in including these dividends in Pollack's income. Pollack has not shown the respondent's determination of deficiencies in his taxes to be *306 erroneous. The respondent determined additions to tax for fraud on the part of Pollack. The petitioners conceded that income was received by him and was not reported on his returns or recorded in his books or reported by any of the corporations he controlled. The amounts concededly received were substantial in relation to the amounts of income he reported. It is clear that Pollack's conduct was fraudulent and that the deficiencies determined in his taxes were at least in part due to fraud with intent to evade tax. The respondent determined additions to tax for fraud on the part of the corporations. Each of them had unreported sales income, commissions, and rebates and unallowable deductions, in substantial amounts, except in the case of Warney for the year ended in 1950, where the amounts omitted were insignificant. The respondent has carried the burden of proving that the substantial deficiencies were at least in part due to fraud with intent to evade tax, and we sustain them except in the case of Warney for the year ended in 1950. Arlette Coat Co., 14 T.C. 751 (195/). The respondent determined additions to tax against Pollack under section 294(d)(1)(A) for failure *307 to file declarations of estimated tax. Pollack has offered no evidence to show that there was reasonable cause for his failure to file such estimates. The additions to tax are sustained. The respondent also determined an addition to tax against Manning's Brake for delinquency in filing its return. No reasonable cause for such delinquency has been shown, and the addition to tax must be sustained. Pollack contends that the deficiencies determined against him for 1947 are barred by the statutory period of limitations. Section 275, Internal Revenue Code of 1939. We have found that Pollack omitted to report substantial amounts of income admittedly received in 1947 and that at least part of the deficiency in tax for such year is due to fraud with intent to evade tax. We have also found that the return for 1947 was false and fraudulent with intent to evade tax. It follows that the statute of limitations does not bar the assessment and collection of the tax for that year. Section 276(a), Internal Revenue Code of 1939. The petitioners contend that the deficiencies determined against Lorney and against Manning's Brake are barred by the statutory period of limitations. Lorney filed a tentative *308 return for the period October 18, 1948, to October 17, 1949, and a final return for the same period, a return and an amended return for the period October 18, 1949, to September 30, 1950, and returns for the fiscal year ended September 30, 1951. Manning's Brake filed a return for a period June 13, 1949, to June 12, 1950, and an amended return for the same period. Consents were signed by both corporations extending the period for assessment of taxes due under any return made for the taxable periods as stated on the returns. The petitioners contend that these consents are not effective to authorize the determination of deficiencies for the periods October 18, 1948, to September 30, 1949, and June 13, 1949, to May 31, 1950, citing Atlas Oil & Refining Corporation, 22 T.C. 552 (1954), and Rev. Rul. 54-273, 1954-2 C.B. 110. They argue that the returns, being for periods not ending on the last day of a month, were for impermissible periods; therefore, according to these rulings, the tax liability should have been determined on a calendar year basis; and, since respondent's determination was for a period different from the consents, the returns, or the calendar *309 year, it is invalid and is now barred by limitations. These petitioners agreed to extend the time for assessment of any taxes due under the returns for the taxable periods stated, being the periods stated on the face of the returns. The respondent, under this agreement, determined the liability for a correct taxable period ending on the last day of the month preceding the last day of the period stated on the return. As far as the record shows, these were the first returns of these corporations and should have been for a period of less than 12 months ending on the last day of a month, such as the period used by the respondent. Regulations 111, section 29.47-2. In the case of Lorney, that corporation filed later returns for fiscal years ending September 30. Manning's Brake, in subsequent periods, used a fiscal year ending May 31. The statute requires that income be computed on the basis of the taxpayer's accounting period. Section 41, Internal Revenue Code of 1939. It is apparent that the respondent merely corrected the period in accordance with the statute in making the determination. The cases and the ruling cited by the petitioners are not in point. Atlas Oil, supra, *310 involved a corporation which kept books on a calendar year basis and filed returns for a fiscal year ended November 30. Rev. Rul. 54-273 concerns an accounting period ending within a month. The books of Lorney were kept on the basis of a fiscal year ended September 30; the books of Manning's Brake for a fiscal year ended May 31. The deficiencies were determined accordingly. The errors made by the corporations in the periods covered by their first returns do not require that deficiencies be determined for calendar years. Nor are the consents invalid when they identify the returns by the actual dates appearing on them. Transferee Cases There are nine transferee proceedings involved. Three of these involve the liability of Pollack as transferee of assets of the three corporations for the deficiencies determined against the corporations. Three others involve the liability of Pollack's wife and daughters as transferees of some of Pollack's assets for the deficiencies determined against him. The remaining three arise from a transfer of real property owned by Lorney, which property was sold and the proceeds transferred to Evelyn and Natalie, and concern the liability of *311 the transferees for the deficiencies determined against Lorney. Where a taxpayer has made a voluntary transfer of property without consideration at a time when the transferor had outstanding debts, the transfer, under New York law, is presumptively fraudulent as to creditors and the burden falls on the transferee to establish that the transferor was not insolvent at the time of the transfer. Leon Papineau, 28 T.C. 54 (1957). See, also, Meyer Fried, 25 T.C. 1241 (1956); Louise Noell, 22 T.C. 1035 (1954), also 24 T.C. 329 (1955); and William Wiener, 12 T.C. 701 (1949). The evidence shows that Pollack received large amounts of cash from the proceeds of sales of cars in conducting the business of the corporations, that these distributions of the corporations' assets were made without consideration and rendered the corporations insolvent, and that such distributions were in fraud of creditors and made when the liability of the corporations for income taxes was accruing. We have so found the facts. It follows that Pollack is liable as a transferee of each of the corporations for the deficiencies determined against it to *312 the extent of the assets transferred from that corporation. The amounts transferred to Pollack by Warney and Manning's Brake were in each case in excess of the deficiencies, and Pollack is liable as transferee for the entire amount of the deficiencies. The amount transferred to Pollack by Lorney, as shown by the respondent's evidence, was less than the deficiencies determined against it, and his liability as transferee of Lorney is limited to the amount shown to have been transferred from it. In addition to concealing or underreporting income of the corporations, Pollack took various steps to defeat the collection of tax deficiencies by transfers of money and other properties without consideration to members of his family. The respondent traced certain transfers of assets to Evelyn, Natalie, and Roberta, without consideration, and has determined deficiencies against them, as transferees, for taxes due from Pollack. Pollack purchased property at 65-40 110th Street in Forest Hills in 1951, taking title as tenants by the entireties with Evelyn. In 1956, he transferred the property to Evelyn alone. The property had a fair market value of $30,000 at that time. The transfer was made *313 when Pollack had incurred liability for income taxes and was made in an effort to hinder the collection of those taxes. The petitioners contend that Evelyn contributed a part of the consideration, being the proceeds of the sale of a house in Queens previously owned in both their names. However, Evelyn testified that Alvin bought the Queens house with his money and made the only payments for the Forest Hills property. The transfer was made in fraud of creditors and Evelyn is clearly a transferee of this property. The value was stipulated to be $30,000. The respondent also attributes to Evelyn as transferred property the amount of $133,858 as the value of a contingent interest in three annuity contracts purchased by Pollack. The contracts provide monthly payments to Pollack commencing in 1952. Evelyn's interest is only that of a beneficiary if surviving the principal annuitant and has no value during Pollack's lifetime, since Pollack retained the right to change the beneficiary. Evelyn was not a transferee of any interest in these contracts. We conclude that Evelyn Pollack is liable as a transferee of assets of Alvin Pollack for the deficiencies determined against him directly to *314 the extent of $30,000. The evidence shows that Pollack, in 1956, while indebted for taxes, transferred to his daughter, Natalie Pollack, now Natalie Pomerantz, without consideration, stock and notes in TCA and Guardian Loan Company, Inc. The transfer was made in an effort to hinder collection of taxes. In 1958 Natalie realized $51,100 from these holdings which she had received from Pollack. She is liable as a transferee of assets of Alvin Pollack to the extent of $51,100 for the deficiencies determined against him directly. The evidence shows that Pollack stated that he had invested $60,000 in Dunes Motel in Miami in the names of Natalie and Roberta. The respondent determined that Natalie and Roberta were transferees each to the extent of $30,000 as a result of this transfer. There is no proof of the amount either of them received from this investment. The burden of proof is on the respondent. Pollack and both of the alleged transferees were available but were not questioned at the trial of the case concerning the extent of this transfer. The proof is insufficient to sustain the determination against Natalie or Roberta as to the proceeds of this transfer. In March 1949 Lorney *315 purchased real property including the place where Pollack and the corporations later carried on the used car business. In October 1949 Lorney transferred the property by deed to Evelyn Pollack. Evelyn took title as Alvin's nominee and for his benefit. In 1956 Evelyn transferred this property by deed to NRG, which mortgaged the property to secure payment of a loan of $100,000. In 1957 the property was sold and from the proceeds Evelyn received $30,000 and Natalie received $25,000. Evelyn and Natalie were the officers of NRG. The respondent determined that NRG was liable as transferee of Alvin Pollack, transferee of Lorney, to the extent of $70,000 on account of the deficiencies determined against Lorney and that Evelyn and Natalie, as transferees of NRG, were each liable to the extent of $60,000 for such deficiencies. The petitioners have shown that Lorney transferred this property not to Alvin, but to Evelyn, who later transferred it to NRG. They contend that the respondent's determination that NRG was transferee of Alvin mistakes the chain of title and is therefore invalid. In addition they say there is no proof of the value of the property transferred. Lorney, while indebted *316 for taxes, transferred without consideration the real property to Evelyn as nominee for Alvin. There can be no question that when Evelyn was holding title to the business property and transferring it she did so as Alvin's agent or nominee, and also in taking title to the Forest Hills property. Her testimony was to the effect that she signed whatever papers, documents, or checks her husband wanted her to sign; that she invested only money which he gave her to invest; that he made all payments on the house, she made none; and that she did not know the nature of their interests in the house. The transfer to Evelyn, under the circumstances, was presumptively fraudulent. Evelyn, as Alvin's agent, later transferred the business property to NRG. This was a corporation in which Evelyn and Natalie were the officers with authority to sign checks. Since NRG mortgaged the property to secure a loan of $100,000, the respondent's determination that NRG received assets of the value of $70,000 originally from Lorney appears amply supported. We sustain the determination against NRG. The evidence shows that of the proceeds of the property sold by NRG, Evelyn received $30,000 and Natalie received *317 $25,000. The respondent has not proved that these transferees received more from Lorney's assets. We sustain the determination of transferee liability to the extent of $30,000 against Evelyn Pollack and $25,000 against Natalie Pomerantz. Decisions will be entered for the respondent in Docket Nos. 78641, 78642, 78645, and 78647. Decision will be entered for the petitioner in Docket No. 78656. Decisions will be entered under Rule 50 in Docket Nos. 78640, 78643, 78644, 78646, 78648, 78649, 78650, and 78651. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Lorney Trading Corporation, Docket No. 78641; Manning's Brake & Auto Service Corporation, Docket No. 78642; Warney Trading Corporation, Docket No. 78643; Alvin Pollack, Transferee, Warney Trading Corp., Transferor, Docket No. 78644; Alvin Pollack, Transferee of Manning's Brake & Auto Service Corporation, Transferor, Docket No. 78645; Alvin Pollack, Transferee of Lorney Trading Corporation, Transferor, Docket No. 78646; N.R.G. Realty Corporation, Transferee of Alvin Pollack, Transferee of Lorney Trading Corporation, Transferor, Docket No. 78647; Natalie Pomerantz, Transferee of N.R.G. Realty Corporation, Transferee of Alvin Pollack, Transferee of Lorney Trading Corporation, Transferor, Docket No. 78648; Evelyn Pollack, Transferee of N.R.G. Realty Corporation, Transferee of Alvin Pollack, Transferee of Lorney Trading Corporation, Transferor, Docket No. 78649; Natalie Pomerantz, Transferee of Alvin Pollack, Transferor, Docket No. 78650; Evelyn Pollack, Transferee of Alvin Pollack, Transferor, Docket No. 78651; and Roberta Chaleff, Transferee of Alvin Pollack, Transferor, Docket No. 78656.↩
*. Amended return.↩